HANSON BRIDGETT LLP
ANDREW G. GIACOMINI, CA SBN 154377
agiacomini@hansonbridgett.com
PATRICK T. BURNS, CA SBN 300219
pburns@hansonbridgett.com
ALENE M. TABER, CA SBN 218554
ataber@hansonbridgett.com
BIANCA A. VELEZ, CA SBN 339795
Bvelez@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone:     (415) 777-3200
Facsimile:     (415) 541-9366

Attorneys for Plaintiffs
DOES 1-150, Individual Persons

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| DOES 1-150, Individual Persons,<br><br>            Plaintiffs,<br><br>    vs.<br><br>UNITED STATES DEPARTMENT OF INTERIOR ("INTERIOR"), a federal agency; DOUG BURGUM, Secretary of the Interior; NATIONAL PARK SERVICE, a federal agency; JESSICA BOWRON, Acting Director of the National Park Service; DAVID SZYMANSKI, Regional Director, Pacific West Region; THE NATURE CONSERVANCY, a District of Columbia nonprofit corporation; BETTY NUNES, TIM NUNES, WILLIAN NUNES, and JACKIE NUNES-HEMELT (HISTORIC A RANCH AND E RANCH); JARROD MENDOZA, KAYLA MENDOZA, LINDA MENDOZA, and JOLYNN McCLELLAND (HISTORIC B RANCH); ROBERT J. McCLURE, and RUTH McCLURE (HISTORIC RANCH I); TOM KEHOE, MIKE KEHOE, EMILY | Case No.<br><br>**NOTICE OF MOTION AND MOTION OF DOES 1-100 TO FILE COMPLAINT UNDER PSEUDONYMS IN PLACE OF THEIR TRUE NAMES; MEMORANDUM OF POINTS AND AUTHORITIES** |

Case No.

NOTICE OF MOTION AND MOTION OF DOES 1-150 TO USE PSEUDONYMS IN PLACE OF THEIR TRUE
NAMES; MEMORANDUM OF POINTS AND AUTHORITIES

21491887.1

JEAN KEHOE, JANNELLE KEHOE, JUSTIN KEHOE, ANNE KEHOE, TIMOTHY J. KEHOE JR., and TIM KEHOE (HISTORIC J RANCH) collectively "DEPARTING RANCHERS"; and ROES 1 to 30, inclusive,

                    Defendants.

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** as counsel may be heard in the San Francisco Courthouse, 450 Golden Gate Avenue, DOES 1-100, Individual Persons, all of whom are residents of existing housing on the ranches at issue in this litigation and some of whom work on those ranches ("Agricultural Workers") will and hereby do move this Court for an order permitting them to use pseudonyms in place of their true names.

This Motion is made upon the following grounds: The use of pseudonyms are necessary to protect Agricultural Workers from retaliation by their employers, eviction, increased intimidation and harassment, potential harm, and the risk of deportation. Agricultural Workers meet the standards to proceed anonymously established by the Ninth Circuit in *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000).

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declaration of Andrew Giacomini, the Declarations of Does 1, 5, 9, 14, 20, 23, 27, and 29 filed concurrently herewith, all of the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

21491887.1

1    DATED:  February 3, 2025                    HANSON BRIDGETT LLP

2

3                                          By:        /s/ Andrew G. Giacomini

4                                              ANDREW G. GIACOMINI
                                               PATRICK BURNS
5                                              ALENE M. TABER
                                               BIANCA A. VELEZ
6                                              Attorneys for Plaintiffs
7                                              DOES 1-150, Individual Persons.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

21491887.1
NOTICE OF MOTION AND MOTION OF DOES 1-150 TO USE PSEUDONYMS IN PLACE OF THEIR TRUE
NAMES; MEMORANDUM OF POINTS AND AUTHORITIES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

The Agricultural Workers are filing this motion to obtain an order to file their complaint with pseudonyms in place of their names. As discussed below, the Agricultural Workers have legitimate reasons to be concerned that if their identities become public, there is a risk of retaliation by their employers, increased intimidation and harassment, and deportation. Their specific identities are not germane to the case, and neither the other parties or the public interest will be affected by allowing the Agricultural Workers to proceed anonymously.

### II.     BACKGROUND

Agricultural Workers live on ranches located in the Point Reyes National Seashore in Marin County, California (the "National Seashore") and some Agricultural Workers are also employed on the ranches. Declaration of Doe 1 ("Doe 1 Decl."), ¶ 3; Declaration of Doe 5 ("Doe 5 Decl."), ¶ 3; Declaration of Doe 9 ("Doe 9 Decl."), ¶ 3; Declaration of Doe 14 ("Doe 14  Decl."), ¶ 3; Declaration of Doe 20 ("Doe 20 Decl."), ¶ 3; Declaration of Doe 23 ("Doe 23 Decl."), ¶ 3; Declaration of Doe 27 ("Doe 27 Decl."), ¶ 3; Declaration of Doe 29 ("Doe 29 Decl."), ¶ 3. The National Seashore is managed by the U.S. National Park Service (the "Park Service"). When Point Reyes was established as a National Seashore, multi-generational ranching became a legislatively authorized use. It still is to this day.

In response to the then Secretary of Interior Salazar's directive that the National Park Service pursue extending permits for the ranchers to 20-year terms, the National Park Service began a planning process to allow for the ongoing practice of permitting commercial dairy and cattle ranching in the National Seashore. Three environmental groups, Resource Renewal Institute, Center for Biological Diversity and Western Watersheds Project, sued the National Park Service in 2016 objecting to the issuance of these permits. The parties settled their lawsuit with the National Park Service agreeing to issue an amendment to the 1980 General Management Plan ("GMPA") that addressed and analyzed the environmental impacts of continuing to allow livestock grazing at the Seashore.

After ten years of studies and analysis and a robust public process that considered over 8,000

21491887.1

1  public comments, the National Park Service decided to issue 20-year leases to ranchers at the Point
2  Reyes National Seashore. Even though the three environmental groups agreed to this process, they
3  nevertheless again sued the National Park Service again in this Court, this time over the resulting
4  decision (Case No. 22-cv-145, the "Environmentalists' Lawsuit"). The environmental groups are
5  seeking a permanent injunction prohibiting the National Park Service from approving 20-years
6  leases with the ranches, which will result in the discriminatory practice of evicting Hispanic
7  agricultural workers and their families from their homes without due process.

8      For almost three years the Environmentalists' Lawsuit has never progressed. As the
9  Agricultural Workers understand the situation the parties are participating in a confidential
10  mediation process and that this is leading to a settlement whereby the ranchers will relinquish their
11  leases and close down the ranches, including vacating worker housing. Declaration of Andrew G.
12  Giacomini ("Giacomini Decl"), ¶ 3; Doe 1 Decl., ¶ 5; Doe 5 Decl., ¶ 5; Doe 9 Decl., ¶ 5; Doe 14
13  Decl., ¶ 5; Doe 20 Decl., ¶ 5, Doe 23 Decl., ¶ 5; Doe 27 Decl., ¶ 5; Doe 29 Decl., ¶ 5.

14      Agricultural Workers have an interest in the ranches leasehold rights as they have subleases
15  with the ranchers. Some have long rented housing as a part of their original employment
16  arrangement with the ranchers. Doe 1 Decl., ¶ 4; Doe 5 Decl., ¶ 4; Doe 9 Decl., ¶ 4; Doe 14 Decl.,
17  ¶ 4; Doe 20 Decl., ¶ 4, Doe 23 Decl., ¶ 4; Doe 27 Decl., ¶ 4; Doe 29 Decl., ¶ 4. If the ranchers'
18  leasehold interests are terminated as a result of this lawsuit, Agricultural Workers will lose not only
19  their jobs, but also their housing. Doe 1 Decl., ¶ 6; Doe 5 Decl., ¶ 6; Doe 9 Decl., ¶ 6; Doe 14 Decl.,
20  ¶ 6; Doe 20 Decl., ¶ 6, Doe 23 Decl., ¶ 6; Doe 27 Decl., ¶ 6; Doe 29 Decl., ¶ 6. Agricultural Workers'
21  households fall in the extremely low, very low, and low income categories, earning less than 80%
22  of median income. Doe 1 Decl., ¶ 7; Doe 5 Decl., ¶ 7; Doe 9 Decl., ¶ 7; Doe 14 Decl., ¶ 7; Doe 20
23  Decl., ¶ 7, Doe 23 Decl., ¶ 7; Doe 27 Decl., ¶ 7; Doe 29 Decl., ¶ 7; Giacomini Decl., ¶ 4, Ex. 1
24  [Excerpts of Marin County Housing Element]. There is a severe lack of affordable housing in West
25  Marin County, and a backlog of persons needing assistance finding interim housing, rental
26  assistance, and permanent housing. Giacomini Decl., ¶ 4, Ex. 1. The Agricultural Workers have
27  been searching for affordable housing, but have not been able to find a place to live.  Doe 1 Decl.,
28  ¶ 6; Doe 5 Decl., ¶ 6; Doe 9 Decl., ¶ 6; Doe 14 Decl., ¶ 6; Doe 20 Decl., ¶ 6, Doe 23 Decl., ¶ 6; Doe

2

Case No.

21491887.1

27 Decl., ¶ 6; Doe 29 Decl., ¶ 6. Because there are insufficient County services to address the current housing shortage, Agricultural Workers and their families are at risk of becoming unhoused. Doe 1 Decl., ¶ 6; Doe 5 Decl., ¶ 6; Doe 9 Decl., ¶ 6; Doe 14 Decl., ¶ 6; Doe 20 Decl., ¶ 6, Doe 23 Decl., ¶ 6; Doe 27 Decl., ¶ 6; Doe 29 Decl., ¶ 6. Complicating the situation is the fact that some of the Agricultural Workers or their family members are undocumented. Doe 1 Decl., ¶ 9; Doe 5 Decl., ¶ 8; Doe 14 Decl., ¶ 8; Doe 23 Decl., ¶ 8. Their prospect of finding new jobs is low. Their undocumented status may also limit their access to government aid (Giacomini Decl., ¶ 5, Ex. 2 [articles]), and makes them particularly vulnerable to harassment and retaliatory deportation.

The ranchers intervened in the Environmentalists' Lawsuit to protect their interests. But they are prevented from disclosing any information to the public because to participate they had to sign non-disclosure agreements. This lack of transparency, secret negotiating, and imposition of a gag order on matters of public importance is contrary to the public interest. The people that work and live on the ranches, the Agricultural Workers, who are at risk of becoming unhoused and joining the tens of thousands of people living on the streets, tried to intervene in the Environmentalists' Lawsuit like the ranchers did. But, unlike the ranchers, their attempts were met with considerable opposition from the environmental groups and National Park Service. As such, the Agricultural Workers were left with no option but to file this action to ensure their interests are protected.

As part of their intervention request, Agricultural Workers filed an almost identical motion to proceed with pseudonyms in place of their names. The Honorable Judge Maxine M. Chesney granted the motion. Giacomini Decl., ¶ 6, Ex. 3.

As explained further below, this motion is necessary to protect the Agricultural Workers from retaliation by their employers, increased intimidation and harassment, and the risk of deportation.

## III.    ARGUMENT

Rule 10(a) requires that the title of the complaint must name all the parties. Fed. R. Civ. P. 10(a). However, the courts, including the Ninth Circuit, "have permitted parties to proceed anonymously when special circumstances justify secrecy." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). In the Ninth Circuit, parties are permitted "to use

1  pseudonyms in the 'unusual case' when nondisclosure of the party's identity 'is necessary ... to

2  protect a person from harassment, injury, ridicule or personal embarrassment.'" *Id*. at 1067-68 citing

3  *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir.1981).

4       The Ninth Circuit adopted a balancing test. A "party may preserve his or her anonymity in

5  judicial proceedings in special circumstances when the party's need for anonymity outweighs

6  prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced*

7  *Textile Corp.*, 214 F.3d at 1068. The burden is on the party seeking anonymity to establish that the

8  need for anonymity outweighs the other party's prejudice and the public's interest. *Id.*, 214 F.3d at

9  1068.

10      The Ninth Circuit identified three situations in which courts previously found the balance to

11 favor litigants proceeding anonymously. *Id.*, 214 F.3d at 1068.  As discussed below, two of these

12 situations apply here: (1) "when identification creates a risk of retaliatory physical or mental harm";

13 and, (2) "when the anonymous party is 'compelled to admit [his or her] intention to engage in illegal

14 conduct, thereby risking criminal prosecution." *Id.*

15 **A.     Risk of Retaliatory Conduct**

16      The Ninth Circuit identified five factors that should be evaluated when deciding whether

17 pseudonyms can be used to shield the anonymous party from retaliation: (1) the severity of the

18 threatened harm; (2) the reasonableness of the anonymous party's fears; (3) the anonymous party's

19 vulnerability to such retaliation; (4) the precise prejudice at each stage of the proceedings to the

20 opposing party, and whether proceedings may be structured so as to mitigate that prejudice; and (5)

21 whether the public's interest in the case would be best served by requiring that the litigants reveal

22 their identities." *Id*.

23      **1.     Severity of the Threatened Harm and Reasonableness of the Anonymous Party's Fears**

24

25      The first two *Advanced Textile* factors—severity of the threatened harm and the

26 reasonableness of the plaintiffs' fears—"are intricately related and should be addressed together."

27 *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1043 (9th Cir. 2010).

28 Agricultural Workers are fearful of three types of harm as a result of their participation in this case:

4                                            Case No.

21491887.1

losing their jobs, retaliatory deportation, and harassment by some "extremists".

Economic retaliatory harm or the risk of physical or mental harm is recognized as a legitimate means for litigants to proceed anonymously under a pseudonym. In *Does I thru XXIII v. Advanced Textile Corp.*, the Ninth Circuit held that garment workers could use fictitious names in their complaint because they feared that, if their identities were disclosed to defendants, they will be fired from their jobs, deported, arrested, and imprisoned by the People's Republic of China. 214 F.3d at 1062.

Agricultural Workers are similarly fearful that if their names are made public, their employment may be terminated, it may be difficult to find alternate employment in the community, they may be evicted, or they may be harassed or retaliated against in other ways. Doe 1 Decl., ¶ 10; Doe 5 Decl., ¶ 9; Doe 9 Decl., ¶ 9; Doe 14 Decl., ¶ 9; Doe 20 Decl., ¶ 9; Doe 23 Decl., ¶ 9; Doe 27 Decl., ¶ 9; Doe 29 Decl., ¶ 8. They would not only lose the means to support themselves and their families, but because they live on the ranches, termination of employment would also result in the loss of housing. Given the housing situation in West Marin County, overwhelmed government services, and long waiting lists for assistance, there is real risk that they will become unhoused. The severity of the harm extends beyond losing a job, but includes losing stability and shelter for the entire family. Disclosure that may affect basic rights to shelter and a livelihood can be a compelling reason to allow Agricultural Workers to proceed anonymously. *Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 507 (M.D. Pa. 2007), aff'd in part, vacated in part, 620 F.3d 170 (3d Cir. 2010), cert. granted, judgment vacated sub nom. *City of Hazleton, Pa. v. Lozano*, 563 U.S. 1030 (2011), and aff'd in part, rev'd in part, 724 F.3d 297 (3d Cir. 2013).

Discovery of a workers' immigration status could allow the parties and extremists to raise implicitly the threat of deportation and criminal prosecution to discourage the Agricultural Workers from pursuing their interests and requests for relief in this lawsuit. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1065 (9th Cir. 2004). Parties can proceed anonymously if they have legitimate concerns that the public identification would make them easy targets of intense anti-immigrant and anti-Latino sentiment. *Lozano*, 496 F. Supp. 2d at 507.

Here, some of the Agricultural Workers are undocumented, as well as have undocumented

21491887.1

family members. Doe 1 Decl., ¶ 9; Doe 5 Decl., ¶ 8; Doe 14 Decl., ¶ 8; Doe 23 Decl., ¶ 8. These Agricultural Workers are scared that if their identities became known to the parties and public, they will be reported to government officials, face criminal charges, and be deported. Doe 1 Decl., ¶ 10; Doe 5 Decl., ¶ 9; Doe 14 Decl., ¶ 9; Doe 23 Decl., ¶ 9.

Fearing harassment and violence involved with controversially public matters is a another reason to allow the Agricultural Workers to proceed anonymously. *Doe v. Stegall*, 653 F.2d 180, 181 (5th Cir. 1981) cited by *Does I thru XXIII v. Advanced Textile Corp.*; see also *Gomez v. Buckeye Sugars*, 60 F.R.D. 106, 107 (N.D.Ohio 1973) (permitting plaintiffs to use pseudonyms to protect them from employer reprisals). In *Stegall*, the plaintiffs sought to stop student participation in religiously-oriented ceremonies and voluntary praying in public schools. *Id.* at 182. The Fifth Circuit held that the plaintiffs were entitled to proceed anonymously because the lawsuit made revelations about the plaintiffs' personal beliefs and practices that were "shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Id.* Evidence on the record indicated that they may expect "extensive harassment and perhaps even violent reprisals if their identities are disclosed" to a community hostile to the viewpoint reflected in the plaintiffs' complaint. *Id.* While the Court believed the "threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity", threats of violation in conjunction with the other factors, such as children, weigh in favor of maintaining anonymity. *Id.*

Court records are on-line and easily accessible. Agricultural Workers are fearful of physical harm and harassment to them, their families, and children if they are associated with any opposition to the environmental concerns expressed by the National Park Service and environmental groups. Doe 1 Decl., ¶ 10; Doe 5 Decl., ¶ 9; Doe 9 Decl., ¶ 9; Doe 14 Decl., ¶ 9; Doe 20 Decl., ¶ 9; Doe 23 Decl., ¶ 9; Doe 27 Decl., ¶ 9; Doe 29 Decl., ¶ 8. The threatened harm is not hypothetical. As testified to by several ranchers in the Environmentalist's Lawsuit, there are extremists that harass and threaten the safety of ranch owners and their employees. Giacomini Decl., Ex. 4 (Dkt. No. 47-1 [Declaration of Julie Evans Rossotti], ¶ 18; Dkt. No. 47-2 [Declaration of Robert J. McClure], ¶ 16; Dkt. No. 47-3 [Declaration of Tim Kehoe], ¶¶ 21, 24; Dkt. No. 47-4 [Declaration of William Nunes], ¶ 20; Dkt. No. 47-5 [Declaration of Peter Obstler], ¶ 14.) Agricultural Workers are concerned that

21491887.1

1   if the extremists become aware of their involvement in the lawsuit, the extremists will be able to

2   identify them, and the harassment and threats will intensify. Doe 1 Decl., ¶ 10; Doe 5 Decl., ¶ 9;

3   Doe 9 Decl., ¶ 9; Doe 14 Decl., ¶ 9; Doe 20 Decl., ¶ 9; Doe 23 Decl., ¶ 9; Doe 27 Decl., ¶ 9; Doe

4   29 Decl., ¶ 8. Thus, the threat of harm is severity and reasonable.

5        2.    **Anonymous Party's Vulnerability**

6        Agricultural Workers rely on the ranch owners for housing. If their identifies are disclosed

7   they risk losing not only their jobs, but their homes. So, there is a lot at stake for these individuals.

8   Undocumented workers are also particularly vulnerable to exploitation because they cannot

9   complain for fear of criminal prosecution and the threat of deportation. *Rivera*, 364 F.3d at 1065.

10  As undocumented workers, Agricultural Workers are particularly vulnerable because they believe

11  they are not in a position to complain to their employers, law enforcement, or the courts.

12       Further, the Agricultural Workers are of Hispanic heritage, and the recent rhetoric against

13  immigrants espoused by persons running for elected office has led to documented cases of racism

14  and physical attacks. Doe 1 Decl., ¶ 11; Doe 5 Decl., ¶ 10; Doe 9 Decl., ¶ 10; Doe 14 Decl., ¶ 10;

15  Doe 20 Decl., ¶ 10; Doe 23 Decl., ¶ 10; Doe 27 Decl., ¶ 10; Doe 29 Decl., ¶ 9; Giacomini Decl., ¶

16  5, Ex. 2 [recent articles]. There is a pervasive climate of anti-immigrant sentiment and violence in

17  this Country. Giacomini Decl., ¶ 4, Ex. 2. Agricultural Workers are fearful of similar attacks. Doe

18  1 Decl., ¶ 11; Doe 5 Decl., ¶ 10; Doe 9 Decl., ¶ 10; Doe 14 Decl., ¶ 10; Doe 20 Decl., ¶ 10; Doe 23

19  Decl., ¶ 10; Doe 27 Decl., ¶ 10; Doe 29 Decl., ¶ 9.

20       3.    **Prejudice to the Opposing Party, and Whether Proceedings may be Structured
21             to Mitigate that Prejudice**

22       The relief Agricultural Workers seek, housing, is quite modest. The true name of each

23  Agricultural Worker has no relevance to this action or whether the relief they seek should be granted.

24  So, there is no prejudice at any stage of the proceedings to the opposing party, and no need to

25  structure the proceedings to mitigate prejudice that does not exist.

26       4.    **The Public Interest in the Litigants' Identities**

27       In cases where the public interest primarily centers around the underlying nature of the action

28  and not party's identity, a party can proceed under a pseudonym. *Doe v. L. Offs. of Winn & Sims*,

1  No. 06-CV-00599-H-AJB, 2021 WL 2662311, at *1 (S.D. Cal. June 29, 2021). That is the case here.

2  This case involves the public interests in, for example, housing, government transparency, and the

3  future uses at the National Seashore. However, the specific identifies of the Agricultural Workers'

4  are not germane to the Court's consideration of these important issues. The case does not hinge on

5  their identities.  Rather, the case involves issues that affect the group as a whole. As such, there is

6  no public interest to be served by publicly disclosing the names of the Agricultural Workers.

7  **B.**    **Fear of Deportation**

8      Immigration status is treated with great sensitivity. Public access to immigration matters are

9  restricted under the Federal Rules of Civil Procedure, and protective orders may be granted for good

10  cause or the documents filed under seal. Fed. R. Civ. P. 5.2(c), (e)-(f). Immigration status can be a

11  basis to prohibit disclosure of a plaintiff's true and correct name. *L.V.Q. v. Geo Grp., Inc.*, No. 1:24-

12  CV-00656-KES-CDB, 2024 WL 2853344, at *2 (E.D. Cal. June 5, 2024) (order granted to proceed

13  under pseudonym and for protective order to protect private health information and immigration

14  status); *Advanced Textile Corp.*, 214 F.3d at 1062.

15      There is precedent for protecting information about undocumented workers. In *Rivera v.*

16  *NIBCO*, the Ninth Circuit considered whether the discovery process to inquire into the plaintiffs'

17  immigration status should include inquiries as to citizenship. 364 F.3d at 1061. The Court granted

18  the protective order because the harm of disclosure would chill the plaintiffs' willingness and ability

19  to bring civil rights claims. *Id*. at 1064. As aptly stated by the Court, "undocumented workers

20  confront the harsher reality that, in addition to possible discharge, their employer will likely report

21  them to the INS and they will be subjected to deportation proceedings or criminal prosecution." *Id*.

22  The Court noted the chilling effect that such disclosures could have on the bringing of civil rights

23  actions, which "unacceptably burdens the public interest".

24      In *Lozano v. City of Hazleton*, the court found that the plaintiffs are entitled to proceed

25  anonymously because they feared disclosure of their identifies would lead to deportation and make

26  them easy targets of intense anti-immigrant and anti-Latino sentiment. 496 F.Supp.2d at 507. Trial

27  testimony showed that "the intense public interest in the ordinances led at times to harassment and

28  intimidation that created fear even among those with a more secure social and legal status than the

1  anonymous plaintiffs." *Id*. at 508.

2      As discussed above, some of the Agricultural Workers are undocumented or have family

3  members that are undocumented. Doe 1 Decl., ¶ 9; Doe 5 Decl., ¶ 8; Doe 14 Decl., ¶ 8; Doe 23

4  Decl., ¶ 8.  They are fearful of an arrest, criminal proceeding, and deportation, or forced family

5  separation as a result of some members of the family being deported. Doe 1 Decl., ¶ 10; Doe 5 Decl.,

6  ¶ 9; Doe 14 Decl., ¶ 9; Doe 23 Decl., ¶ 9.  These are the same fears expressed in *Rivera v. NIBCO*

7  and *Lozano v. City of Hazleton* that the courts found sufficient to protect the parties true identities.

8  The Agricultural Workers concerns are heightened by the fact that the defendant in this case is a

9  federal agency. Doe 1 Decl., ¶ 10; Doe 5 Decl., ¶ 9; Doe 14 Decl., ¶ 9; Doe 23 Decl., ¶ 9. Further,

10  like the plaintiffs in *Lozano v. City of Hazleton* parties to this proceeding have already been the

11  subject of harassment. The facts show that there are special circumstances supporting the

12  Agricultural Workers need for anonymity.

13                              **IV.<u>CONCLUSION</u>**

14      Agricultural Workers have met their burden to establish that the need for anonymity

15  outweighs the other parties' prejudice and the public's interest. Therefore, Agricultural Workers ask

16  the Court to grant their request to use the pseudonyms of Does 1-100 in this proceeding for all

17  purposes.

18  DATED:  February 3, 2025                    HANSON BRIDGETT LLP

19

20                                        By:/s/ Andrew G. Giacomini

21                                          ANDREW G. GIACOMINI
                                            PATRICK BURNS
22                                          ALENE M. TABER
                                            BIANCA A. VELEZ
23                                          Attorneys for Plaintiffs
                                            DOES 1-150, Individual Persons
24

25

26

27

28

21491887.1

NOTICE OF MOTION AND MOTION OF DOES 1-150 TO USE PSEUDONYMS IN PLACE OF THEIR TRUE
NAMES; MEMORANDUM OF POINTS AND AUTHORITIES