HANSON BRIDGETT LLP
ANDREW G. GIACOMINI, SBN 154377
agiacomini@hansonbridgett.com
PATRICK BURNS, SBN 300219
pburns@hansonbridgett.com
ALENE M. TABER, SBN 218554
ataber@hansonbridgett.com
BIANCA A. VELEZ, SBN 339795
Bvelez@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Plaintiffs
DOES 1-150, Individual Persons

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

| | |
|---|---|
| DOES 1-150, Individual Persons,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF INTERIOR ("INTERIOR"), a federal agency; DOUG BURGUM, Secretary of the Interior; NATIONAL PARK SERVICE, a federal agency; JESSICA BOWRON, Acting Director of the National Park Service; DAVID SZYMANSKI, Regional Director, Pacific West Region; THE NATURE CONSERVANCY, a District of Columbia nonprofit corporation; and ROES 1 to 30, inclusive,<br><br>Defendants. | Case No. 3:25-cv-01115-MMC<br><br>Assigned for All Pre-Trial Purposes to the Hon. Judge Maxine M. Chesney<br><br>**NOTICE OF MOTION AND MOTION FOR ORDER REQUIRING FEDERAL DEFENDANTS AND THE NATURE CONSERVANCY TO PRODUCE ALL DOCUMENTS RESPONSIVE TO PLAINTIFFS' LIMITED DISCOVERY REQUEST AND TO SHORTEN TIME TO FOR DEFENDANTS' RESPONSE TO DISCOVERY; MEMORANDUM; DECLARATION OF ALENE TABER AND EXHIBITS ATTACHED THERETO; PROPOSED ORDER**<br><br>Motion Hearing: None Set<br>Trial Date: None Set |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** Does 1-150 ("Agricultural Workers" or "Plaintiffs"), will and hereby do, make a Motion for an Order Requiring U.S. Department of Interior ("Interior"), National Park Service ("NPS"), and The Nature Conservancy ("TNC") (Collectively, "Defendants") to produce all documents responsive to Plaintiffs' Limited Discovery Request and to Shorten Time for Defendants to Respond to Discovery pursuant to Civil Local Rules 6-1(b) and 7-2. The Court ordered that this Motion shall be deemed submitted on May 28, 2025, on the papers without oral argument.

Good cause exists for the Court to grant this Motion. On May 1, 2025, Federal Defendants filed a Motion to Dismiss Agricultural Workers' Complaint that relies upon extrinsic evidence, such as the contracts between TNC and six beef cattle ranchers and six dairy farmers ("Departing Ranchers"). ECF 36 [pp. 2, 9-10, 13-15]. Federal Defendants also argue that their actions did not lead to or motivate the changes to the 2021 Record of Decision ("ROD") or issuance of the 2025 Revised ROD. ECF 36 [p. 10]. Federal Defendants claim they have no direct legal relationship with Agricultural Workers. ECF 36 [p. 10]. And, so on. These arguments are made without any evidentiary basis. Further, once Federal Defendants disputed the factual allegations of the Complaint with extrinsic evidence their Motion to Dismiss became a factual challenge, and the Court "must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006). Since Agricultural Workers are not in possession of the evidence relied upon by Federal Defendants or rebuttal evidence, they need to propound discovery to Federal Defendants and TNC in order to fairly respond to these issues raised by Federal Defendants. The absence of discovery would irreparably prejudiced and hinder Agricultural Workers' ability to oppose the Federal Defendants' Motion to Dismiss as they would be unable to present material evidence necessary to satisfy their burden of establishing jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Further, in order to accommodate the briefing schedule on Federal Defendants' Motion to Dismiss, Agricultural Workers also request that the time for Federal Defendants and TNC to respond

to the limited discovery and provide the responsive documents to Plaintiffs' attorneys be shortened to June 9, 2025.

This Motion is based on this Notice and Memorandum, the Declaration of Alene Taber filed concurrently herewith, all the pleadings, files, and records in this proceeding, all other matters of which the Court may take judicial notice, and any argument or evidence that may be presented to or considered by the Court prior to its ruling.

DATED: May 16, 2025

HANSON BRIDGETT LLP

By: ______________________

ANDREW G. GIACOMINI
PATRICK BURNS
ALENE M. TABER
BIANCA A. VELEZ
Attorneys for DOES 1-150

# MEMORANDUM

## I. INTRODUCTION AND STATEMENT OF ISSUES

Federal Defendants[1] seek to dismiss litigation filed by Does 1-150 ("Agricultural Workers" or "Plaintiffs") on Article III jurisdiction grounds under Rule 12(b)(1). The Agricultural Workers' lawsuit stems from Federal Defendants' decision to disregard their statutory obligations to implement a 2021 Record of Decision ("ROD") and instead adopt a 2025 Revised ROD that entirely reversed the 2021 ROD. ECF 1 [¶¶5, 27, 63, 85, 94.C., 121-123, 132-133]. The 2021 ROD allowed for 20-year leases to be issued to ranchers located at the Point Reyes National Seashore and would have ensured safe and secure housing for the ranch hands and their families. ECF 1 [¶¶47-55, 122]. Under the 2025 Revised ROD, ranching is eliminated from the National Seashore in favor of environmental interests that staffers deemed more important than food and affordable housing. ECF 1 [¶¶5, 70-71, 94.E.].

Federal Defendants argue in their Motion to Dismiss that it is TNC's contracts with the ranchers that are causing Agricultural Workers' harm, not the federal government. ECF 36 [pp. 15-16]. To support their arguments, Federal Defendants rely upon the secret TNC-Rancher Contracts and assertions about their motivations that are not supported by any tangible evidence. *Id*. Without the TNC-Rancher Contracts and access to rebuttal evidence, Agricultural Workers are at a severe disadvantage to show they have Article III standing.

## II. AGRICULTURAL WORKERS' REQUESTS

Agricultural Workers seek an order requiring Federal Defendants to produce the following documents in response to limited discovery as follows:

1. Individual Departing Rancher Agreements (with names redacted) including documents and communications that relate to these Agreements.

2. Recission of the 2021 ROD.

3. 2025 Revised ROD.

[1] U.S. Department of Interior, Secretary of Interior, National Park Service ("NPS"), Director of the NPS, and Regional Director, Pacific West Region.

4. NPS's decision not to offer 20-year leases to the ranchers.

5. Tomales Point Area Plan that removed fencing at Tomales Point that protected grazing areas from intrusions by the tule elk.

6. 2025 Succession Policy.

7. Lease Option and Cooperative Agreement with TNC.

8. Documents submitted in response to the inquiry by the U.S. House of Representatives, Committee on Natural Resources.

9. 2025 Settlement Agreement.

Agricultural Workers seek an order requiring Federal Defendants to produce the following documents in response to limited discovery as follows:

1. Individual Departing Rancher Agreements (with names redacted) including documents and communications that relate to these Agreements.

2. Documents submitted in response to the inquiry by the U.S. House of Representatives, Committee on Natural Resources.

3. Documents that relate to TNC's decision to buy-out the ranchers.

4. Lease Option and Cooperative Agreement with NPS.

The Requests for Production of Documents to be propounded to Federal Defendants and TNC are included in Exhibits 1-3 attached to the Declaration of Alene Taber ("Taber Decl."). The requests encompass both evidence Federal Defendants' purport to rely upon in their Motion to Dismiss, as well as rebuttal evidence intended to be relied upon by Plaintiffs in their opposition.

Agricultural Workers also request that the time for Federal Defendants and TNC to respond to the limited discovery and provide the responsive documents to Plaintiffs' attorneys be shortened to June 9, 2025, to accommodate the stipulated briefing schedule.

## III. RELEVANT FACTS

Agricultural Workers live and work on ranches located in the Point Reyes National Seashore in West Marin County, California. ECF 1 [¶¶1, 33]. Their households fall in the extremely low, very low, and low income categories, earning less than 80% of median income. ECF 1 [¶34]. The rent

they pay is just within the limits of affordability for these households. *Id*. Agricultural Workers are as much a part of the long and rich history of beef cattle and dairy operations at Point Reyes as the ranchers.

In 2021, after ten years of studies and analysis and a robust public process that considered over 8,000 public comments, NPS issued a ROD that provided for the issuance of 20-year leases to ranchers at the Point Reyes National Seashore. ECF 1 [¶¶3, 44, 47]. The 2021 ROD was supported by an Environmental Impact Statement ("EIS") required by the National Environmental Policy Act ("NEPA") to analyze its impacts. ECF 1 [¶45]. NPS's decision was consistent with Congress's policy and intent memorized in legislation that agricultural lands in the Point Reyes National Seashore be leased back to prior owners or lessees for commercial ranching purposes. ECF 1 [¶¶1, 35-38, 43, 48, 54]. U.S.C. §459c-5. The decision also meant that Agricultural Workers' homes and jobs at the National Seashore were safe and secure. ECF 1 [¶3]. NPS had even developed a template of the 20-year ranch leases that would greatly benefit Agricultural Workers by, for example, ensuring that worker housing is safe, sanitary, and decent, and that the physical condition of such housing complies with all applicable laws. ECF 1 [¶53].

On January 10, 2022, three environmental groups, Resource Renewal Institute, Center for Biological Diversity and Western Watersheds Project ("Environmentalist") sued NPS seeking a permanent injunction prohibiting the issuance of the 20-year leases (the "Environmentalists' Lawsuit[2]"). ECF 1 [¶¶4, 56]. For almost three years the Environmentalists' Lawsuit never progressed because the parties, along with TNC, secretly negotiated and decided issues of public interest and policy. ECF 1 [¶¶61-62]. Instead of defending the 2021 ROD and implementing official government policy and law (which is to permit ranching), the "confidential" mediation provided the perfect cover for NPS staffers to conspire with TNC to eliminate ranching at the Point Reyes National Seashore. ECF 1 [¶¶5, 61, 99]. TNC agreed to buy-out the ranchers for NPS in exchanged for a lease option and cooperative agreement allowing TNC to take over the vacated ranches and homes (the "TNC-Rancher Contracts"). ECF 1 [¶¶66-68]. Food and housing were eliminated in

---

[2] *Resource Renewal Institute v. National Park Service*, Case No. 3:22-cv-145-MMC.

favor of environmental interests. In January 2025, NPS sealed the deal by rescinding the 2021 ROD and issuing a 2025 Revised ROD without a new EIS. ECF 1 [¶¶70-71, 118].

Agricultural Workers are not the only ones concerned about NPS's secret dealings. ECF 1 [¶73]. The U.S. House of Representatives, Committee on Natural Resources, sent a letter to TNC and other environmental groups[3] stating that, "The Committee is concerned not only with the lack of transparency surrounding the settlement but also with the environmental and legal consequences the settlement may impose." Taber Decl., ¶4, Ex. 4. The Committee demanded that TNC and the other environmental groups provide it by April 24, 2025, with documents including all communications regarding the settlement agreement, and fundraising and organizing related to the cessation of agricultural operations at Point Reyes. *Id*.

Because California is experiencing a public health and safety crisis due to the severe lack of affordable housing, it will be very difficult for Agricultural Workers to locate replacement housing in their community. Affordable housing for the most vulnerable members of society became a just another casualty of environmental activism. Federal Defendants' decisions will cause impacts required to be considered under NEPA such as, the loss of safe and sanitary housing for low-income households, increased need for public services, and increasing the number of persons that will be exposed to outdoor air and noise pollution, food insecurity, and exposure to infectious diseases. ECF 1 [¶¶36, 144]. Left with no other alternatives to protect their rights, on February 3, 2025, Agricultural Workers filed their lawsuit against the Department of Interior, NPS, and TNC. ECF 1. Agricultural Workers alleged violations of the Fifth Amendment, Fair Housing Act, Declaratory Judgment Act, NEPA, the Administrative Procedures Act ("APA"), All Writs Act, and California Tenant Protection Act. ECF 1. On May 1, 2025, Federal Defendants filed a Motion to Dismiss Agricultural Workers' Complaint that relies upon extrinsic evidence which Federal Defendants acknowledges converts motions to dismiss into a factual attack. ECF 36 [p. 11].

On May 8, 2025, Agricultural Workers filed an *Ex Parte* Application seeking an order either

---

[3] Western Watersheds Project, Advocates for the West, Center for Biological Diversity, and Resource Renewal Institute.

extending time or vacating the hearing and briefing schedule for Federal Defendants' and TNC's Motions to Dismiss and Stay Discovery, along with setting Plaintiffs' planned Motion for an Evidentiary Hearing for a motion hearing before the Court. ECF 47. Agricultural Workers sought time to conduct discovery because Agricultural Workers are not in possession of certain documents Federal Defendants rely upon in their Motion, including the TNC-Rancher Contracts, as well as to obtain rebuttal evidence to support this Court's Article III jurisdiction. The Court ordered Plaintiffs to refile their application as a motion and set an expedited briefing schedule. This is said motion.

## IV. ARGUMENT

### A. Plaintiffs Have a Right to the Evidence Relied Upon by Federal Defendants and to Present Rebuttal Evidence to Oppose NPS's Motion to Dismiss Based on Rule 12(b)(1)

The evaluation of a Rule 12(b)(1) motion to dismiss depends upon whether the motion is a facial or a factual attack. *McMorgan & Co. v. First California Mortg. Co.*, 916 F. Supp. 966, 973 (N.D. Cal. 1995). By submitting extrinsic evidence, Federal Defendants essentially acknowledge they are making a factual attack instead of a facial attack based solely on the allegations in the Complaint. ECF 36 [p. 11]. In a factual attack, the challenger is basically asserting that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Hamilton v. United States*, No. 24-CV-04491-BLF, 2025 WL 915881, at *2 (N.D. Cal. Mar. 26, 2025). In this situation, the district court is free to hear extraneous evidence regarding jurisdiction and to rule on that issue prior to trial. *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). Once "a defendant contests any of the jurisdictional allegations as pled by the plaintiff, the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006).

### B. Discovery Is Necessary to Analyze Federal Defendants' Arguments and Support Agricultural Workers' Rebuttal

Federal Defendants assert that this Court lacks jurisdiction because Agricultural Workers' injuries are not caused by Federal Defendants nor redressable by an order vacating the 2025 Revised ROD. ECF 36 [p. 14]. Rather, Federal Defendants argue that TNC alone is responsible for

Agricultural Workers losing their homes.

According to Federal Defendants:

> the closure of ranches is not a federal action but is instead the result of private contracts between TNC and each departing ranch family. In response to these private contracts, the NPS issued the 2025 Revised ROD which rezones the departing ranchers' formerly leased lands for conservation and public use purposes (i.e. "Scenic Landscape"). That the closures are non-federal actions is affirmed by the fact that the 2025 Revised ROD post-dates the departing ranchers' contracts with TNC. The contracts signed by the departing ranchers to cease their operations and relinquish their leases—i.e., "the independent action of some third party not before the court"— is the cause of Plaintiffs' losing their jobs and housing…Plaintiffs have failed to show how future evictions are "fairly traceable" to the 2025 Revised ROD—as opposed to the underlying and unchallenged private contracts—and have thus failed to establish Article III causation…Plaintiffs' alleged harm—i.e., eviction—can only be redressed by an order: (1) undoing the private contracts between the departing ranchers and TNC…. ECF 36 [p. 15].

These allegations are not from the Complaint. Rather, Federal Defendants are promoting their version of the TNC-Rancher Contracts and their motivations for issuing the 2025 Revised ROD, but **without properly presenting the Court and other parties with the evidence that supports these assertions**.

The National Park Service cannot plausibly pretend that it had nothing to do with TNC offering buyouts to the ranchers, under a management plan for a national park, adopted by NPS. Agricultural Workers allege that the ranches never would have closed except for NPS's decisions and the Agricultural Workers would have enjoy housing for at least 20 more years. ECF 1 [¶33]. Ranching legally existing at the Point Reyes National Seashore, and the 2021 ROD and 2021 Succession Policy was issued to continue allowing ranching. ECF 1 [¶¶35-41, 43, 46-50, 54-55]. But, NPS deliberately never implemented the 2021 ROD and Succession Policy even though they remained valid under the law and NPS was under a legal obligation to implement the documents. ECF 1 [¶¶27, 63]. NPS created uncertainty for the ranchers and a time crisis by issuing only very short term leases (and not the 20-year leases authorized by the 2021 ROD). ECF 1 [¶¶5, 63]. NPS also reversed its prior 2021 decision to maintain the fencing at Tomales Point to protect grazing

areas from intrusions by the tule elk. ECF 1 [¶¶64, 71]. Removal of the fences so the elk would be a free-range population was “the functional equivalent of a permanent injunction against grazing by ranchers” and sounded the “death knell” for ranching continuing in the National Seashore. ECF 1 [¶64].

Agricultural Workers further allege that NPS could not directly compensate the ranchers for relinquishing their leases because Congress has to appropriate funds for the acquisitions and there is a statutory limit on the total amount of compensation that the Secretary of Interior may pay the ranchers. ECF 1 [¶¶66, 73-74, 96]. 16 U.S.C. §§ 459c-2(a), 459c-7. Therefore, TNC paid the ranchers and in exchange NPS provided TNC with a lease option and cooperative agreement allowing TNC to take over the ranches. ECF 1 [¶¶66-67, 73-74]. Agricultural Workers understand that the TNC-Rancher Contracts include terms that provide financial benefits to the Departing Ranchers if they evict the Agricultural Workers. ECF 1 [¶¶68, 75].

Contrary to Federal Defendants’ assertions, there was no need, and NPS was not legally obligated, to revise the 2021 ROD to reflect the Departing Ranchers’ relinquishment of their leases with NPS as there was already a succession policy in place that contemplated the current ranchers discontinuing ranching. ECF 1 [¶¶55, 94.H.]. Under the 2021 Succession Policy, leases could transition to new operators under certain conditions and existing ranchers could relocate to a vacant or closed ranch. *Id*. So, the ranches could have remained despite the TNC-Rancher Contracts.

The only reason NPS revised the 2021 ROD by adopting the 2025 Revised ROD was because it wanted to conclusively eliminate all ranching and worker housing, and replace these uses with the TNC plan for targeted grazing and environmental restoration. ECF 1 [¶¶70-71, 93-94]. Along with the 2025 Revised ROD, NPS issued a new Succession Policy that now prevents new operators from taking over ranches covered by the TNC-Rancher agreements, and these Departing Ranchers from relocating their operations to vacant or closed ranches. ECF 1 [¶¶70, 94].

Agricultural Workers would be irreparably prejudiced if Federal Defendants were allowed to make arguments unsupported by evidence or based on documents that are not in the Agricultural Workers’ possession or properly before the Court, or if Agricultural Workers are not permitted to

introduce rebuttal evidence to support their jurisdiction-related allegations. Discovery is necessary if it is possible that the plaintiff can demonstrate the requisite jurisdictional facts if afforded that opportunity. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989). That is the case here as the allegations from the Complaint discussed above are sufficient to establish that NPS caused Agricultural Workers' injuries which can be redressed by NPS, and therefore, Article III jurisdiction exists.

## V. AN ORDER SHORTENING TIME FOR FEDERAL DEFENDANTS AND TNC TO RESPOND TO DISCOVERY IS NECESSARY

Normally, under Rule 34(b)(2)(A) a response to requests for production of documents is due 30 days after service of the request. However, if Federal Defendants and TNC were permitted the fully 30 days, there would be insufficient time to accommodate the stipulated briefing schedule. The Court ordered that this Motion shall be deemed submitted on the papers without oral argument on May 28, 2025. Even if the Court were to issue an order requiring Federal Defendants and TNC to respond to the discovery as early as May 30, 2025, Federal Defendants and TNC would have until June 29, 2025 to respond. This is after Agricultural Workers' opposition to Federal Defendants' Motion to Dismiss is due on June 20, 2025.

During the meet and confer on the briefing schedule for the Motions to Dismiss, Plaintiffs' counsel requested the schedule take into account the time necessary for Federal Defendants and TNC to respond to discovery if so ordered by the Court. Taber Decl., ¶5, Ex. 5. Federal Defendants refused to consider the request. *Id*. TNC did not respond to Plaintiffs' request. Taber Decl., ¶6, Ex. 6. In order to provide sufficient time for Plaintiffs to review the documents and draft their opposition, Plaintiffs request that Federal Defendants and TNC be order to produce documents no later than June 9, 2025. The Court has authority to order a shorter time for parties to produce the requested documents under Rule 34(b)(2)(A).

There is no prejudice as Federal Defendants and TNC. Both parties have anticipated Agricultural Workers' discovery demands from the scope of the Complaint and the initial disclosure request in the Rule 26 Report, hence their Motions to Stay Discovery. And, most of the responsive

documents should have already been collected as requested by the U.S. House of Representatives, Committee on Natural Resources.

**VI. CONCLUSION**

Good cause exists for the Court to grant this Motion. On May 1, 2025, Federal Defendants filed a Motion to Dismiss Agricultural Workers' Complaint that relies upon extrinsic evidence, thus, converting its Motion into a factual attack. ECF 36 [p. 11]. Once Federal Defendants disputed the factual allegations of the Complaint with extrinsic evidence, the Court "must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction." *McCann*, 458 F.3d 281, 290 (3d Cir. 2006). Without these documents and access to rebuttal evidence, Agricultural Workers are prejudiced and at a severe disadvantage to show they have Article III standing. Therefore, Agricultural Workers request the Court issue an order requiring Federal Defendants and TNC to produce all documents responsive to Agricultural Workers' discovery as set forth in the Taber Declaration, Exhibits 1-3, and to shorten time for their response to June 9, 2025.

DATED: May 16, 2025

HANSON BRIDGETT LLP

By: ______________________

ANDREW G. GIACOMINI
PATRICK BURNS
ALENE M. TABER
BIANCA A. VELEZ
Attorneys for DOES 1-150

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of May, 2025, I electronically filed the foregoing **NOTICE OF MOTION AND MOTION FOR ORDER REQUIRING FEDERAL DEFENDANTS AND THE NATURE CONSERVANCY TO PRODUCE ALL DOCUMENTS RESPONSIVE TO PLAINTIFFS' LIMITED DISCOVERY REQUEST AND TO SHORTEN TIME TO FOR DEFENDANTS' RESPONSE TO DISCOVERY; MEMORANDUM; DECLARATION OF ALENE TABER AND EXHIBITS ATTACHED THERETO; PROPOSED ORDER** with the Clerk of the Court using the CM/ECF system.

Bianca Velez