U.S. DEPARMENT OF JUSTICE
ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

DAVID W. GEHLERT
Trial Attorney
Natural Resources Section
999 18th Street, North Terrace, Suite 600
Denver, CO  80202
(303) 844-1386
david.gehlert@usdoj.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOES 1-150, Individual Persons, | Case No. 3:25-cv-1115-MMC |
| Plaintiffs, | **FEDERAL DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | **Hearing**: July 17, 2026, 9:00 a.m. |
| UNITED STATES DEPARTMENT OF INTERIOR, *et al*., | **Honorable Maxine M. Chesney** |
| Defendants, | |

# NOTICE OF MOTION TO DISMISS

PLEASE TAKE NOTICE THAT on July 17, 2026, at 9:00 a.m. before the Honorable Maxine Chesney, Defendants will move to dismiss Plaintiffs' Amended Complaint (Dkt. No. 97).

## TABLE OF CONTENTS

*Introduction* ............................................................................................................................ 1

*Argument* ............................................................................................................................... 2

I.    LEGAL STANDARDS ................................................................................................ 2

    A.    Federal Rule of Civil Procedure 12(b)(1) ....................................................... 2

    B.    Federal Rule of Civil Procedure 12(b)(6). ...................................................... 3

II.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1). ....... 3

    A.    Plaintiffs Lack Standing for Their Due Process, FHA, and CTPA Claims Because Plaintiffs' Asserted Injury is Not Redressable. .............................. 3

    B.    Plaintiffs Lack Standing to Assert Their NEPA Claims. ................................ 4

    C.    Plaintiffs Lack Standing to Pursue Their Equal Protection Claim or the Claim is Not Ripe. ........................................................................................ 5

    D.    Plaintiffs' Due Process, FHA, and CTPA Claims are Moot. .......................... 5

III.  PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) ........ 6

    A.    Plaintiffs' Fifth Amendment Claims Fail as a Matter of Law ........................ 6

        1.    Plaintiffs have failed to state a procedural due process claim. ......... 6

        2.    Plaintiffs have failed to state an equal protection claim. .................. 7

        3.    Plaintiffs have failed to state a takings claim. ................................... 8

    B.    Plaintiffs' FHA Claims Fail as a Matter of Law. ........................................... 9

    C.    Plaintiffs NEPA Claims Fail as a Matter of Law. ........................................ 11

        1.    Plaintiffs have failed to administratively exhaust their NEPA claims. ............ 11

        2.    Plaintiffs' claim that the NPS failed to implement the 2021 ROD is not plausible. ...................................................................... 12

        3.    Plaintiffs' claim that the NPS failed to provide for public input is not plausible. ...................................................................... 13

        4.    Plaintiffs' claim that a new or supplemental EIS is required is not plausible. ................................................................................ 13

        5.    Plaintiffs' mitigation claim is not plausible. ................................... 14

      6.     Plaintiffs' Executive Order 12898 claim is not plausible. .............................. 15

    D.     Plaintiffs' CTPA Claim Fails as a Matter of Law....................................................... 16

*Conclusion* .......................................................................................................................................17

**TABLE OF AUTHORITIES**

Cases

*Allen v. Wright*,
468 U.S. 737 (1984) ............................................................................................................. 2

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 3, 6, 7, 8, 13

*Audubon Soc. of Portland v. Jewell*,
104 F. Supp. 3d 1099 (D. Or. 2015) ............................................................... 12

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................... 3, 13

*Better Hous. for Long Beach v. Newsom*,
452 F. Supp. 3d 921 (C.D. Cal. 2020) ............................................................ 16

*Better Hous. for LongBeach v. Newsom,* No. 20-55373,
2022 WL 2287436 (9th Cir. June 24, 2022) ................................................... 16

*Blackburn v. United States*,
100 F.3d 1426 (9th Cir. 1996) ........................................................................ 16

*Brewster v. Board of Educ. of Lynwood Unified Sch. Dist.*,
149 F.3d 971 (9th Cir. 1998) ............................................................................ 6

*Carey v. Piphus,*
435 U.S. 247 (1978) .......................................................................................... 6

*Citizens for a Better Henderson v. Hodel*,
768 F.2d 1051 (9th Cir.1985) ......................................................................... 13

*Citizens for Better Forestry v. U.S. Dept. of Agric.*,
341 F.3d 961 (9th Cir. 2003) .......................................................................... 11

*Citizens for Fair Representation v. Padilla*,
815 F. App'x 120 (9th Cir. 2020) ..................................................................... 5

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................................... 5

*Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,*
611 F.3d 495 (9th Cir. 2010) ............................................................................ 3

*Conner v. Raver*,
No. 22-CV-08867-JST, 2023 WL 5498728 (N.D. Cal. Aug. 24, 2023) ............ 7

*Cottonwood Env't L. Ctr. v. Marten*, No. 2:20-CV-00031-BU-BMM,
2020 WL 7401612 (D. Mont. Dec. 17, 2020) ................................................. 14

*Cottonwood Env't L. Ctr. v.Marten,* No. 21-35070,
2022 WL 1439127 (9th Cir. May 6, 2022) ...................................................... 14

*Ctr. for Biological Diversity v. Tracy Stone-Manning,*
No. 2:24-CV-02043-CDS-NJK, 2026 WL 867175 (D. Nev. Mar. 27, 2026) ...... 12

*Ctr. for Food Safety v. Hamburg*,
954 F. Supp. 2d 965 (N.D. Cal. 2013) ............................................................ 12

*Cunningham v. Universal Underwriters*,
98 Cal. App. 4th 1141, 120 Cal. Rptr. 2d 162 (2002) ...................................... 7

*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004) ........................................................................................ 12

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*,
784 F. Supp. 2d 1142 (C.D. Cal.) ..................................................................... 9

*Friant Water Auth. v. Jewell*,
No. 1:14-CV-000765-LJO-BAM, 2014 WL 6774019 (E.D. Cal. Dec. 1, 2014) ........................... 8

*Friends of the Crazy Mts. v. Erickson,*
No. 22-35555, 2024 WL150250, (9th Cir. Apr. 8, 2024*)* ................................................................. 12

*Friends of Marolt Park v. U.S. Dep't of Transp.*,
382 F.3d 1088 (10th Cir. 2004) ........................................................................................................ 13

*Garza v. Woods*,
150 F.4th 1118 (9th Cir. 2025) ........................................................................................................... 3

*Hancock v. Train*,
426 U.S. 167 (1976)............................................................................................................................ 16

*Harris v. Itzhaki*,
183 F.3d 1043 (9th Cir. 1999) ............................................................................................................. 6

*Hartmann v. Cal. Dep't of Corr. & Rehab.*,
707 F.3d 1114 (9th Cir. 2013) ............................................................................................................. 7

*Hausrath v. United States Dep't of the Air Force*,
491 F. Supp. 3d 770 (D. Idaho 2020) ................................................................................................ 16

*In re Nat'l Sec. Agency Telecomms. Recs. Litig.*,
669 F.3d 928 (9th Cir. 2011) ............................................................................................................... 9

*In re Permian Basin Area Rate Cases*,
390 U.S. 747 (1968)........................................................................................................................... 13

*Keith v. Volpe*,
118 F.3d 1386 (9th Cir. 1997) ........................................................................................................... 12

*Lewis v. Cont'l Bank Corp.*,
494 U.S. 472 (1990)............................................................................................................................. 3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)............................................................................................................................. 2

*Lingle v. Chevron U.S.A. Inc.*,
544 U.S. 528 (2005)............................................................................................................................. 8

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)............................................................................................................................. 2

*Morongo Band of Mission Indians v. F.A.A.*,
161 F.3d 569 (9th Cir. 1998) ............................................................................................................. 16

*Nat'l Parks & Conservation Ass'n v. BLM*,
606 F.3d 1058 (9th Cir.2010) ........................................................................................................... 12

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004)............................................................................................................................. 12

*Oscar v. Univ. Students Co-op. Ass'n,*
965 F.2d 783 (9th Cir. 1992) ............................................................................................................... 3

*Planned Parenthood of Greater Wash. & No. Idaho v. U.S. Dep't of Health & Hum.*,
*Sers.*, 946 F.3d 1100 (9th Cir. 2020)................................................................................................... 3

*Portman v. Cnty. of Santa Clara*,
995 F.2d 898 (9th Cir. 1993) ............................................................................................................... 6

*Robertson v. Methow Valley Citizens Council,*
490 U.S. 332 (1989)........................................................................................................................... 15

*Ruvalcaba v. City of Los Angeles*,
167 F.3d 514 (9th Cir. 1999) ......................................................................................................... 4, 6

*S. Fork Band Council of W. Shoshone of Nevada v. U.S. Dep't of Interior*,
588 F.3d 718 (9th Cir. 2009) ............................................................................................................. 15

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) ............................................................................................... 2
*Slater v. City of Philadelphia*,
  No. CIV.A. 15-502, 2015 WL 3421595 (E.D. Pa. May 28, 2015) ..................................... 6
*Summers v. Earth Island Inst.*,
  555 U.S. 488 (2009) ............................................................................................................ 4
*Sun Oil Co. v. United States*,
  572 F.2d 786 (Fed. Cl. 1978) ............................................................................................. 8
*Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*,
  17 F.4th 950 (9th Cir. 2021) ................................................................................... 9, 10, 11
*Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
  576 U.S. 519 (2015) .......................................................................................................... 10
*Theodore Roosevelt Conservation P'ship v. Salazar*,
  661 F.3d 66 (D.C. Cir. 2011) ............................................................................................. 4
*United States v. White Mountain Apache Tribe*,
  537 U.S. 465 (2003) ............................................................................................................ 9
*Wards Cove Packing Co. v. Antonio*,
  490 U.S. 642 (1989) .......................................................................................................... 11
*Washington v. Davis*,
  426 U.S. 229 (1976) ............................................................................................................ 7
*Weinberger v. Wiesenfeld*,
  420 U.S. 636 (1975) ............................................................................................................ 7
*Zoeller v. United States*,
  65 Fed. Cl. 449 (Fed. Cl. 2005) ........................................................................................ 8

Statutes

16 U.S.C. § 459c-7 ................................................................................................................... 9
42 U.S.C. §§ 3601 et al ............................................................................................................ 8
42 U.S.C. §§ 3604(a) ............................................................................................................... 9
54 U.S.C. § 100101 ............................................................................................................ 8, 11
Cal. Civ. Code § 1946.2 ........................................................................................................ 16
Cal Gov. Code §§ 12900 et at ................................................................................................. 8
Cal. Health & Safety Code §§ 24050–24054 ........................................................................ 17
Pub. L. No. 87-657, 76 Stat. 538 (1962) ............................................................................... 11

Rules

Federal Rule of Civil Procedure 12(b)(1) ............................................................................... 2
Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 2, 3, 13

Other

40 C.F.R. § 1502.9(d)(1) (2024) ........................................................................................... 13
Executive Order 14173, 90 Fed. Reg. 98633 (Jan. 21, 2025) .............................................. 15
Executive Order 12898, 59 Fed. Reg. 7629 (1994) ........................................................ 15, 16

***Introduction***

As this Court is aware, this case is an offshoot of the settlement of *Resource Renewal Institute v. National Park Service* in which ranching families entered into private, bilateral contracts with The Nature Conservancy ("TNC") to end their ranching operations and depart the Point Reyes National Seashore ("Seashore") in return for compensation from TNC.  In response to the ranchers' decisions to vacate the Seashore, the National Park Service ("NPS") issued a Record of Decision on January 8, 2025 ("2025 ROD") which is the subject of this litigation.

Plaintiffs originally sought to intervene in the *Resources Renewal* litigation in order to compel the NPS to provide them with housing after the ranchers departed.  *Resources Renewal Institute v. National Park Service*, No. 3:22-cv-145-MMC (N.D. Cal), Dkt. No. 108 at 2-3.  The NPS opposed Plaintiffs' intervention because the agency lacks statutory authority to provide housing for members of the public in the absence of multi-generational ranching.  *See id.,* Dkt. No. 117 at 1.  Plaintiffs then brought suit seeking to prevent the NPS from evicting them and to compel the NPS to reinstate the ROD it had issued in 2021 which was the subject of the *Resources Renewal* litigation. *See* Compl., Dkt No. 1 ¶ 23.   This Court dismissed the suit but allowed Plaintiffs to amend their complaint.  Order Granting Motion to Dismiss, Dkt. No. 91.  Plaintiffs have now done so.  Amended Complaint, Dkt. No. 97 ("Am. Compl.").

Like their initial complaint, the amended complaint brings housing related claims pursuant to the Fifth Amendment, the Fair Housing Act ("FHA") and the California Tenant Protection Act ("CTPA"), all of which  seek to have the NPS enjoined from "evicting" Plaintiffs or be required to provide housing to Plaintiffs, as well as a claim under the National Environmental Policy Act ("NEPA"), a procedural statute which cannot provide the housing relief Plaintiffs most seek.  While Plaintiffs have addressed some of this Court's criticism of their NEPA claims, the Amended Complaint otherwise differs very little from the Complaint and fails to fix its numerous jurisdictional

Federal Defendants' Reply in Support of Motion to Dismiss – Page 1

and substantive flaws.  In addition, many of the claims are now moot because the last four Plaintiffs residing on the Seashore have left.  Declaration of Anne Altman ¶ 2 (attached as Exhibit 1).

As set forth below, all of Plaintiffs' claims in the Amended Complaint must be dismissed under Fed. R. Civ. P. 12(b)(1), Fed R. Civ. P. 12(b)(6), or both.

### *Argument*

## I.    LEGAL STANDARDS

### A.    Federal Rule of Civil Procedure 12(b)(1)

Dismissal is appropriate under Federal Rule of Civil Procedure ("Rule") 12(b)(1) when a federal court lacks subject-matter jurisdiction.  Federal courts' subject-matter jurisdiction is limited by Article III of the Constitution's "case or controversy" clause, which requires, among other things, that a plaintiff have standing, that the plaintiff's claims be "ripe" for adjudication, and that the plaintiff's claims not be "moot." *Allen v. Wright*, 468 U.S. 737, 750 (1984) (citation modified), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014).

Article III standing requires a Plaintiff to establish three elements which "together make up the irreducible constitutional minimum of standing." *Lexmark Int'l,* 572 U.S. at 125 (citation modified).  First, a plaintiff must have suffered an actual and imminent injury-in-fact. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Second, a plaintiff must show the defendants' alleged misconduct caused the injury. *Id.* And third, a decision in favor of a plaintiff must be likely to redress the injury. *Id.* at 561.

Ripeness doctrine is closely related to standing.  "In measuring whether the litigant has asserted an injury that is real and concrete rather than speculative and hypothetical, the ripeness inquiry merges almost completely with standing." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citation modified).

Issues of mootness arise because Article III limits the jurisdiction of federal courts to "actual, ongoing cases or controversies." *E.g.*, *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). This requirement extends throughout the life of litigation. Thus, when a court can no longer grant effective relief, the matter is moot. *See, e.g.*, *Planned Parenthood of Greater Wash. & No. Idaho v. U.S. Dep't of Health & Hum. Sers.*, 946 F.3d 1100, 1109 (9th Cir. 2020) ("If something happens during litigation that makes relief impossible, the case is moot").

B.    **Federal Rule of Civil Procedure 12(b)(6).**

Dismissal under Rule 12(b)(6) is appropriate when, as a matter of law, the plaintiff's allegations fail to establish a cause of action. *Oscar v. Univ. Students Co-op. Ass'n.,* 965 F.2d 783, 785 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir.2005). On a motion to dismiss under Rule 12(b)(6), all material facts are accepted as true and are construed in the light most favorable to the plaintiff. *Id.; Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.,* 611 F.3d 495, 501 (9th Cir. 2010). A complaint need not state detailed factual allegations but must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible on its face when a plaintiff pleads sufficient factual content to allow the court to draw a reasonable inference that the defendant is liable. *Garza v. Woods*, 150 F.4th 1118, 1126–27 (9th Cir. 2025) (citing *Iqbal*, 556 U.S. at 678).

II.    **PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1).**

A.    **Plaintiffs Lack Standing for Their Due Process, FHA, and CTPA Claims Because Plaintiffs' Asserted Injury is Not Redressable.**

Plaintiffs claim the alleged injuries underlying their Fifth Amendment Due Process, FHA, and CTPA injuries can be redressed through a judicial declaration preventing their eviction and requiring the NPS to implement the 2021 Record of Decision. Am. Compl. ¶¶ 18 (due process), 20 (FHA) & 25 (CTPA). But because all Plaintiffs have now left the Seashore, there is no possibility of

"eviction" which a declaration could redress.[1]   Further, the NPS cannot be required to implement the 2021 ROD because it has been rescinded. *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011).  When the 2025 ROD superseded the 2021 ROD "it became impossible to grant any prospective relief for a failure to enforce" the 2021 ROD.  *Id*. ("We can neither invalidate, nor require the Bureau to adhere to, a [ROD] that has disappeared into the regulatory netherworld" (citation modified)).  Accordingly, Plaintiffs' alleged injuries are not redressable.

### B.    Plaintiffs Lack Standing to Assert Their NEPA Claims.

Now that all of the Plaintiffs have left the Seashore, to have standing to assert a NEPA claim Plaintiffs must document a specific intent to return and enjoy the environment of the Seashore. *See e.g.*, *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009).   This is not a mere formulaic pleading requirement.  Rather, it is necessary to demonstrate the constitutionally required concrete and particularized injury.  *See id.* at 493 (standing requirements exist because a plaintiff must demonstrate a personal stake in the outcome of the controversy).  Absent a documented intent to return and enjoy the environment of the Seashore, Plaintiffs lack a concrete, particularized injury sufficient to support standing.[2] *Id.* at 496.

---

[1]    Alternatively, Plaintiffs request for an injunction preventing their "eviction" is now moot. *Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999).

[2]    Further, Plaintiffs lack standing to assert the first of their NEPA claims—that the NPS must be compelled to implement the 2021 ROD, Am. Compl ¶¶ 104, 109—on an additional basis: that claim is not redressable.  As explained above, the 2021 ROD has been rescinded and no longer provides a basis for injunctive relief.

**C.    Plaintiffs Lack Standing to Pursue Their Equal Protection Claim or the Claim is Not Ripe.**

Plaintiffs claim they have been denied equal protection because the NPS is permitting TNC to reuse ranch buildings as housing for TNC employees.[3]  Am. Compl. ¶ 85.  Plaintiffs cannot have been denied equal protection by the 2025 ROD because the ROD does not permit *anyone* to reuse ranch housing vacated by the departing ranchers.  Rather, the ROD instructs that the NPS "will evaluate and pursue adaptive reuse" of those buildings at a later date and explains that the reuse ultimately selected could include any "types of adaptive reuse that support [the buildings'] long term preservation."[4]  2025 ROD, Dkt. No. 36-4 at 49.   Because the 2025 ROD does not make any decisions about what will be done with the vacated buildings, Plaintiffs' equal protection claim rests on speculation that someday the NPS may decide to use ranch buildings to provide housing for TNC employees.  Those allegations cannot support an equal protection claim. *See e.g.*, *Citizens for Fair Representation v. Padilla*, 815 F. App'x 120, 123 (9th Cir. 2020) (holding that the plaintiffs lacked standing to assert an equal protection claim because they made only speculative allegations regarding unknown future actions); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401, 408 (2013) (standing requirements are "especially rigorous" for constitutional claims and require a threatened injury be "certainly impending" (citation omitted)).

**D.    Plaintiffs' Due Process, FHA, and CTPA Claims are Moot.**

Plaintiffs contend that a justiciable controversy exists between the parties because "[w]ithout the relief sought through this lawsuit, the [Plaintiffs would] face imminent eviction in the near future."  Amd Compl. ¶ 22.  But, as noted above, now that all the Plaintiffs have left the Seashore

---

[3]    Plaintiffs assert "upon information and belief" that TNC's employees "are predominantly not of Hispanic origin."  Am. Compl. ¶ 85.

[4]    Plaintiffs cite provisions of the ROD they believe support their allegation that the NPS has allowed TNC to use vacated ranch buildings for employee housing.  Am. Compl. at ¶ 61.  None guarantees housing for TNC employees.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 5

there is no longer any possibility of eviction.  Further, there is no longer any opportunity to provide the CTPA notice and due process Plaintiffs allege to be required.  This leaves no possibility for effective injunctive relief and renders Plaintiffs' due process, FHA, and CTPA claims moot. *Ruvalcaba*, 167 F.3d at 521 (claims are moot when there is no possibility of effective relief); *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999) (FHA claims for declaratory and prospective injunctive relief are rendered moot when a plaintiff moves away from the property).

## III.   PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6)

### A.   Plaintiffs' Fifth Amendment Claims Fail as a Matter of Law

#### 1.   Plaintiffs have failed to state a procedural due process claim.

Procedural due process standards do not forbid the government from depriving individuals of a protected interest.  Instead, they protect individuals from the mistaken or unjustified deprivation of life, liberty, or property. *Carey v. Piphus,* 435 U.S. 247, 259 (1978).  To state a claim for procedural due process, the plaintiff must show: "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government[, and] (3) lack of process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993); *Brewster v. Board of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998) (expressing the same requirements as two elements).

Here, Plaintiffs claim that "the procedures the [Federal Defendants] followed to settle the Environmentalists' Lawsuit are constitutionally inadequate to evict the [Plaintiffs] from their homes." Am. Compl. ¶ 82. That claim must fail because Plaintiffs were owed no due process from the settlement negotiations.  Plaintiffs were not a necessary indispensable party and therefore had no right to participate in the negotiations. *See Slater v. City of Philadelphia*, No. CIV.A. 15-502, 2015 WL 3421595, at *4 (E.D. Pa. May 28, 2015).

Plaintiffs have also failed to allege any concrete facts showing how settlement of the lawsuit resulted in Plaintiffs being "evicted" from their homes. *See Iqbal*, 556 U.S. at 678 (conclusory

Federal Defendants' Reply in Support of Motion to Dismiss – Page 6

statements are inadequate).  Indeed, although the Amended Complaint acknowledges that many of the Plaintiffs have left the Seashore, it does not allege that there have been any eviction procedures. *Cf. Cunningham v. Universal Underwriters*, 98 Cal. App. 4th 1141, 1149–50, 120 Cal. Rptr. 2d 162, 168–69 (2002) (recognizing eviction involves a legal process). Without any right to participate in the settlement and any concrete facts supporting their claim of eviction, Plaintiffs' procedural due process claims are not plausible and must be dismissed.

### 2.    Plaintiffs have failed to state an equal protection claim.

"The Due Process Clause of the Fifth Amendment contains an equal protection component prohibiting the United States from invidiously discriminating between individuals or groups," *Washington v. Davis*, 426 U.S. 229, 239 (1976).  Courts approach "Fifth Amendment equal protection claims . . . the same as [] equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975).  The government violates equal protection when it "act[s] with an intent or purpose to discriminate against [a plaintiff] based upon membership in a protected class." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citation modified).

To adequately plead discrimination in violation of the Fifth Amendment, Plaintiffs must allege non-conclusory facts showing that the NPS acted "*because of*, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 677 (emphasis added) (citation modified).  Plaintiffs make no such allegation.

Further, even had Plaintiffs adequately pleaded an equal protection claim, the claim would not be plausible because there is an "obvious alternative explanation" for NPS's actions.  *Id.* at 682 (citation omitted); *accord Conner v. Raver*, No. 22-CV-08867-JST, 2023 WL 5498728, at *8 (N.D. Cal. Aug. 24, 2023).  Here, while Plaintiffs weave fanciful tales of conspiracy, the 2025 ROD provides an obvious alternative explanation: "The NPS determined that it was appropriate to issue a Revised ROD" because the "[Departing Ranchers] advised the NPS that they had entered into private, voluntary agreements with [TNC] to cease multi-generational ranching operations in the

Federal Defendants' Reply in Support of Motion to Dismiss – Page 7

Point Reyes portion of the planning area in consideration of compensation payments from TNC." 2025 ROD, Dkt. No. 36-4 at 1.  Consequently, the NPS needed to address management of the lands to be vacated and reasonably did so by creating a Scenic Landscape Zone in furtherance of the NPS's conservation mandate.  *See id.* at 8; *see also* 54 U.S.C. § 100101 (setting forth the "fundamental" conservation purpose of the National Park System).  The straightforward language in the 2025 ROD provides an obvious alternative explanation; consequently, "discrimination is not a plausible conclusion." *Iqbal*, 556 U.S. at 682.

### 3.    Plaintiffs have failed to state a takings claim.

The Fifth Amendment prohibits taking of private property for public use without just compensation.  U.S. Const. amend. V.  Plaintiffs contend they have a "possessory interest" in housing that has been taken.  Am. Compl. ¶ 79.  They do not expressly define that interest other than to say it derives either from a rental arrangement with the departing ranchers or "their employment arrangement with the ranchers."[5] *Id.* ¶ 53.  Either way, what they have is a contractual agreement for housing with the departing ranchers—not the NPS—which ended through the ranchers' decision to leave the Seashore.  Thus, to the extent the Plaintiffs have a potential remedy, it is a breach of contract action against the ranchers, not a Fifth Amendment claim against the NPS.  *E.g.*, *Zoeller v. United States*, 65 Fed. Cl. 449, 460 (Fed. Cl. 2005); *Sun Oil Co. v. United States*, 572 F.2d 786, 818

---

[5]    Plaintiffs also contend their alleged possessory interests were established by the federal Fair Housing Act (42 U.S.C. §§ 3601 et seq.); Section 12955 of the California Fair Employment and Housing Act (Cal. Gov. Code, §§ 12900 et seq.) and the California Tenant Protection Act (Cal. Civil Code, § 1946.2).  Am. Compl. ¶ 79.  Plaintiffs fail to explain how these statutes, which regulate the behavior of landlords, somehow create a property interest in Plaintiffs.  At most they provide an ability to challenge a landlord's action.  A right to challenge an action as illegal does not provide a basis for a takings claim.  *See Friant Water Auth. v. Jewell*, No. 1:14-CV-000765-LJO-BAM, 2014 WL 6774019, at *12 (E.D. Cal. Dec. 1, 2014) (dismissing as frivolous a takings claim based on an alleged violation of a statute); *see also  Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005) (if government action is found to be impermissible no compensation can be awarded).

(Fed. Cl. 1978) ("[T]he concept of a taking as a compensable claim theory has limited application to the relative rights of party litigants when those rights have been voluntarily created by contract").

Plaintiffs have also failed to establish that this Court has jurisdiction over their takings claim. "Jurisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity." *United States v. White Mountain Apache Tribe,* 537 U.S. 465, 472 (2003). Here, that "clear statement" is provided by the Little Tucker Act which authorizes district courts to hear takings claims not exceeding $10,000. *In re Nat'l Sec. Agency Telecomms. Recs. Litig.*, 669 F.3d 928, 932 (9th Cir. 2011) (citing 28 U.S.C. § 1346). Plaintiffs have failed to bring a claim under the Little Tucker Act. Accordingly, Plaintiffs' takings claim must be dismissed. *Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 784 F. Supp. 2d 1142, 1169 (C.D. Cal.), *on reconsideration in part,* 854 F. Supp. 2d 756 (C.D. Cal. 2011), *aff'd,* 744 F.3d 1124 (9th Cir. 2014).

### B.      Plaintiffs' FHA Claims Fail as a Matter of Law.

The FHA makes it unlawful to refuse to sell or rent, "or otherwise make unavailable or deny, a dwelling to any person because of race, color, ... or national origin[,]" and "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, ... or national origin."[6] 42 U.S.C. §§ 3604(a) & (b). Plaintiffs bring a disparate impact claim under the FHA. Am. Compl. ¶ 98. A disparate impact occurs when private or governmental bodies "create a discriminatory effect upon a protected class or perpetuate housing segregation without any concomitant legitimate reason." *Sw. Fair Hous. Council, Inc. v. Maricopa Domestic Water Improvement Dist.*, 17 F.4th 950, 960 (9th Cir. 2021).

---

[6]      The Seashore is different from entities the FHA is typically applied to because the NPS is statutorily precluded from offering housing unconnected to multi-generational ranching. 16 U.S.C. § 459c-7.

When the Supreme Court confirmed that the FHA allows claims for disparate impact in *Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015), the Court placed strict limits on the nature of the claims which may be heard in order to "avoid the serious constitutional questions that might arise under the FHA, for instance, if such liability were imposed based solely on a showing of a statistical disparity." *Inclusive Cmtys.* at 540. The Court required a plaintiff to "allege facts at the pleading stage" sufficient to "make out a prima facia case of disparate impact" or have its claims dismissed. *Id.* at 543. The Supreme Court further cabined the availability of relief under the FHA by instructing that the FHA allows only the "removal of artificial, arbitrary and unnecessary barriers, not the displacement of valid governmental policies." *Id.* at 540 (citation modified).

Plaintiffs' FHA claim is narrow and essentially duplicates their equal protection Claim. Plaintiffs contend the NPS created a disparate impact by treating them differently from TNC's employees through "permitting [TNC] to reuse the ranch buildings as affordable housing for [TNC's] employees." Am. Compl. ¶ 99. The claim fails to present a *prima facia* case of disparate impact. The claim is speculative and not plausible on its face because, as was explained above, the ROD clearly states that no decisions have been made on *any* reuse of ranch buildings.[7] 2025 ROD, Dkt. 36-4 at 49.

But even if Plaintiffs had met the *prima facia* pleading requirements, their FHA claim would have to be dismissed because the NPS acted in a manner which serves its legitimate interests. *Inclusive Cmtys*, 576 U.S. at 540. Because the FHA only empowers courts to invalidate "artificial, arbitrary, and unnecessary barriers to housing," *Sw Fair Hous.*, 17 F.4th at 955, a showing that the challenged action "'serves, in a significant way,' [the defendants'] legitimate interests," provides a

---

[7]    The ROD does not even promise housing to NPS employees. 2025 ROD, Dkt. 36-4 at 49.

defense to a claim of disparate impact, *id.* at 967 (quoting *Wards Cove Packing Co. v. Antonio,* 490 U.S. 642, 659 (1989)).

Here the ranchers' decision to depart made it necessary for the NPS to address the future use of the ranch lands being vacated and the agency's decision to establish the Scenic Landscape Zone served the agency's legitimate interest in managing the lands for conservation purposes consistent with the NPS's statutory mandate.  54 U.S.C. § 100101 (setting forth the "fundamental" conservation purpose of the National Park System); *see also* Pub. L. No. 87-657, § 1, 76 Stat. 538 (1962) (explaining that the Seashore was established "[i]n order to save and preserve, for purposes of public recreation, benefit, and inspiration, a portion of the diminishing seashore of the United States that remains undeveloped").   Further, it was not arbitrary for the NPS to reserve the potential assignment of vacated ranch buildings to a future planning process.  Indeed, this decision is entirely consistent with the General Management Plan's function as essentially a zoning ordinance rather than a means of authorizing specific activities.  *See Citizens for Better Forestry v. U.S. Dept. of Agric.,* 341 F.3d 961, 966 (9th Cir. 2003) (explaining that federal land management plans operate like zoning ordinances "but do not directly compel specific actions").

### C.    Plaintiffs NEPA Claims Fail as a Matter of Law.

Plaintiffs state that their NEPA claims raise three allegations: (1) Defendants failed to implement the 2021 ROD; (2) failed to provide for public input and proceeding; and, (3) failed to prepare an EIS for the Revised ROD.  Am. Compl. ¶ 104.  However, the NEPA claim goes on to dispute the NPS's treatment of mitigation (*id.* at ¶ 123) and to allege the NPS has not complied with Executive Order 12898.  *Id.* at ¶ 125.  All these claims fail as a matter of law.

### 1.  Plaintiffs have failed to administratively exhaust their NEPA claims.

Plaintiffs challenging an agency's compliance with NEPA are obligated to raise their contentions during the NEPA process or lose the opportunity to pursue them in court.  *Dep't of*

Federal Defendants' Reply in Support of Motion to Dismiss – Page 11

*Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65 (2004); *Nat'l Parks & Conservation Ass'n v. BLM,* 606 F.3d 1058, 1065 (9th Cir.2010).  This rule applies even when the EIS process occurred years before the decision.  *Friends of the Crazy Mts. v. Erickson*, No. 22-35555, 2024 WL1502507, at *2 (9th Cir. Apr. 8, 2024) (dismissing challenge to 2018 decision to reroute trail that had been the subject of a 2006 EIS).   The EIS process was the time for Plaintiffs to raise their desire to have low income housing on the Seashore.  Because Plaintiffs have not alleged that they participated during the public comment process for the EIS, all of Plaintiffs' NEPA claims should be dismissed.  *Ctr. for Biological Diversity v. Tracy Stone-Manning,* No. 2:24-CV-02043-CDS-NJK, 2026 WL 867175, at *7 (D. Nev. Mar. 27, 2026) (finding "plaintiffs waived their argument regarding BLM's failure to analyze the baseline conditions and impacts from groundwater pumping in Fish Lake Valley because [they] failed to raise it during the public comment period").

### 2. Plaintiffs' claim that the NPS failed to implement the 2021 ROD is not plausible.

As was explained above, the 2021 ROD is a legal nullity.  But even if it were not, NEPA cannot be used to require the NPS to implement the 2021 ROD because NEPA is a procedural statute which cannot be used to compel a particular outcome.  *E.g.*, *Keith v. Volpe*, 118 F.3d 1386, 1393 (9th Cir. 1997) ("NEPA imposes only procedural requirements, it does not dictate a substantive environmental result" (internal citation omitted)).  Perhaps recognizing the limits of NEPA, Plaintiffs go on to cite Section 706(1) of the APA.  Section 706(1) allows a court, in certain circumstances not present here, to compel an agency to make a decision; it does not allow a court to compel the content of that decision.  *Ctr. for Food Safety v. Hamburg*, 954 F. Supp. 2d 965, 968 (N.D. Cal. 2013); *accord Audubon Soc. of Portland v. Jewell*, 104 F. Supp. 3d 1099, 1102 (D. Or. 2015); *see also Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 65 (2004).  Moreover, it has long been recognized that agencies have the ability to change their policies and decisions.  *E.g.*, *In re*

Federal Defendants' Reply in Support of Motion to Dismiss – Page 12

*Permian Basin Area Rate Cases*, 390 U.S. 747, 784 (1968).   In short, there is no legal basis for Plaintiffs' attempt to use NEPA to compel the NPS to implement the 2021 ROD.

### 3. Plaintiffs' claim that the NPS failed to provide for public input is not plausible.

Plaintiffs' claim that the NPS was required to provide for public comment in conjunction with issuing the 2025 ROD fails because Plaintiffs have failed to allege a legal duty requiring the NPS to provide public participation before issuing a ROD.  In this case, the EIS process was the vehicle to provide the public with information and an opportunity to participate.  *E.g., Citizens for a Better Henderson v. Hodel,* 768 F.2d 1051, 1056 (9th Cir.1985); *see also* EIS, Dkt. No. 36-2 at 229 (describing public comment process).  The ROD, in contrast, did not require public participation because it merely documents and explains the NPS' decision.  *Friends of Marolt Park v. U.S. Dep't of Transp.*, 382 F.3d 1088, 1096 (10th Cir. 2004).

### 4. Plaintiffs' claim that a new or supplemental EIS is required is not plausible.

Plaintiffs' claim that a new or supplemental EIS is required fails because it rests on conclusory and inaccurate allegations.  To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead both a viable legal theory and "enough factual matter, taken as true, *Bell Atl. Corp.*, 550 U.S. at 556 (citation modified), "to state [the] claim to relief ... plausible on its face." *Id.* at 556.   A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Iqbal*, 556 U.S. at 678.  Conclusory statements and mere formulaic recitations of the elements of the cause of action are inadequate.  *Bell Atl. Corp.,* 550 U.S. at 555.

Plaintiffs correctly acknowledge that a Supplemental EIS is appropriate when there are "substantial changes to the proposed action that are relevant to environmental concerns."  Am. Compl. ¶ 114 (quoting 40 C.F.R. § 1502.9(d)(1) (2024)).  They then rotely assert that the management plan adopted by the 2025 ROD will have "significantly different environmental

Federal Defendants' Reply in Support of Motion to Dismiss – Page 13

effects" than those considered in the 2020 EIS.  *Id.* ¶ 120.  Plaintiffs' allegation that a supplemental EIS was required fails because Plaintiffs fail to allege sufficient facts to make a claim to relief plausible on its face.  Instead, Plaintiffs merely assert that there will be "greater than expected" levels of certain activities because "*almost all* ranching will cease and the [elk] fencing will be removed at round [sic] the same time."[8]  *Id* (emphasis added).  Such conclusory statements do not provide sufficient facts for this court to draw a reasonable inference that a Supplemental EIS is required when Alternative F in the 2020 EIS assessed a scenario where *all* ranching would be ended and anticipated that "[o]nce ranching operations cease, the elk fence at Tomales Point would be removed."  *See* Dkt. No. 36-2 at 52-54 (describing alternative); *see also Cottonwood Env't L. Ctr. v. Marten*, No. 2:20-CV-00031-BU-BMM, 2020 WL 7401612, at *4 (D. Mont. Dec. 17, 2020) (dismissing claim that an SEIS was required where the plaintiff failed to show how alleged new information would have a significant effect on the environment), *aff'd,* No. 21-35070, 2022 WL 1439127 (9th Cir. May 6, 2022).

### 5.  Plaintiffs' mitigation claim is not plausible.

Plaintiffs' NEPA claims also appear to assert that the NPS did not discuss mitigation.  *See* Am. Compl. ¶ 124.  According to Plaintiffs, the "mitigation measures discussed in Appendix F [of the EIS] are for Alternative B" and there is no discussion of mitigation measures "for the selected alternative in the Revised ROD."  *Id.*  These allegations are implausible on their face.  The mitigation measures discussed in Appendix F of the EIS are not restricted to any particular

---

[8]    Plaintiffs undermine their own argument by also citing impacts from "reduced grazing" they concede were "documented in the 2021 ROD."  Am. Compl. ¶ 120.  Plaintiffs are also wrong in implying the 2020 EIS did not address changes in the elk population and associated impacts resulting from closure of ranches or the development of trails, day use and overnight accommodations, and shuttles and parking.  *See* 2020 EIS, Dkt No. 36-2 at 54, 33-35, 52-53.

alternative.[9] Instead, they provide mitigation for specific activities. *See* EIS Appendix F (attached as Exhibit 2). Thus, the mitigation measures apply to all alternatives, including the no ranching alternative assessed in the EIS. *See* 2025 ROD, Dkt No. 36-4 at 47 ("Management Activities implemented under conservation-oriented agreements will follow practice standards and mitigation measures as outlined in appendix F of the FEIS, as also described in Section 7.6.3 for ranch operations"). Further, the ROD expressly applies the mitigation of Appendix F to all Management Activities, whether they occur in the continuing commercial ranch operations or the Scenic Landscape zone.[10] *See id.* at 34.

Plaintiffs' mitigation claim is also implausible because it again improperly seeks to use NEPA to achieve a particular outcome. Although Plaintiffs concede that adaptive reuse of ranch structures "is specifically recognized in the Final EIS," they urge that reuse of ranch structures "*should* be implemented as a mitigation measure" to provide them with affordable housing. Am. Compl. ¶ 124 (emphasis added). As the Supreme Court has long recognized, NEPA only requires discussion of mitigation of environmental consequences; it does not allow a plaintiff to compel any mitigation, much less particular mitigation. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 352 (1989); *accord S. Fork Band Council of W. Shoshone of Nevada v. U.S. Dep't of Interior*, 588 F.3d 718, 727 (9th Cir. 2009).

### 6.    Plaintiffs' Executive Order 12898 claim is not plausible.

Plaintiffs' NEPA allegations include a claim that the NPS failed to comply with the now rescinded Executive Order ("EO") 12898 addressing environmental justice. Am. Compl. ¶ 125; *see also* EO 14173, 90 Fed. Reg. 8633 (Jan. 21, 2025) (rescinding EO 12898). As the Ninth Circuit has recognized, EO 12898 expressly provides that it does not create any right to judicial review for

---

[9]    Indeed, none of the Alternatives are even mentioned in Appendix F.

[10]    The 2025 ROD also added additional requirements to Appendix F. *See* 2025 ROD, Dkt. 36-4 at E2-E4 (ECF pp. 142-144).

Federal Defendants' Reply in Support of Motion to Dismiss – Page 15

alleged noncompliance and therefore cannot support a NEPA claim. *Morongo Band of Mission Indians v. F.A.A.*, 161 F.3d 569, 575 (9th Cir. 1998) (citing Exec. Order No. 12898, 59 Fed.Reg. 7629, § 6–609 (1994) ( "This order shall not be construed to create any right to judicial review involving the compliance or noncompliance of the United States, its agencies, its officers, or any other person with this order")); *accord Hausrath v. United States Dep't of the Air Force*, 491 F. Supp. 3d 770, 795 (D. Idaho 2020) (judicial review of Executive Order 12898 is not available under NEPA and the APA). Accordingly, Plaintiffs' EO 12898 allegations must be dismissed.

### D.    Plaintiffs' CTPA Claim Fails as a Matter of Law.

The CTPA precludes "residential landlords from terminating a tenancy without 'just cause' if the tenant has lawfully and continuously occupied the property for more than twelve months." *Better Hous. for Long Beach v. Newsom*, 452 F. Supp. 3d 921, 926 (C.D. Cal. 2020) (citing Cal. Civ. Code § 1946.2(a)), *aff'd*, No. 20-55373, 2022 WL 2287436 (9th Cir. June 24, 2022). "Just cause" exists when housing is withdrawn from the rental market, as the NPS effectively did here with the ranch housing it owns.[11] *See* Cal. Civ. Code § 1946.2(b)(2)(B). Despite that, Plaintiffs appear to assert that the CTPA prevents the NPS from taking any action which would result in "eviction" of Plaintiffs without compliance with the Act's requirements. Am. Comp. ¶ 132. The CTPA cannot prevent the NPS from taking action to manage the Seashore, even if the action has the effect of withdrawing housing from the rental market.

"[U]nder the intergovernmental immunity component of the Supremacy Clause to the United States Constitution, states may not directly regulate the Federal Government's operations or property." *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996) (citing *Hancock v. Train*, 426 U.S. 167, 178–80 (1976)). Thus, in *Blackburn*, the Ninth Circuit held that the NPS could not be compelled to post notices in Yosemite National Park that were purportedly required by the

---

[11]    Ranch workers and tenants also lived in trailers owned by the ranchers.

California Resort Act, Cal. Health & Safety Code § 24050–24054.  So too here.  Intergovernmental immunity prevents the NPS from being compelled to take any act allegedly required by the CTPA.

## *Conclusion*

Plaintiffs' second bite at the apple is no more successful than their first.  Plaintiffs have failed to show standing for their claims and failed to show that any of their claims are capable of generating meaningful relief.  Plaintiffs' Amended Complaint should be dismissed.

Dated:  April 13, 2026                    Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
U.S. DEPARMENT OF JUSTICE
Environment and Natural Resources Division

/s/ *David W. Gehlert*
DAVID W. GEHLERT (CO Bar 21852)
Trial Attorney
Natural Resources Section
999 18th Street, South Terrace, Suite 370
Denver, CO  80202
(303) 844-1386
david.gehlert@usdoj.gov

*Attorneys for Defendants*
*U.S. Dept. of the Interior, et al.*

### CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

/s/ *David W. Gehlert*
DAVID W. GEHLERT

Federal Defendants' Reply in Support of Motion to Dismiss – Page 17