U.S. DEPARMENT OF JUSTICE
ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division

DAVID W. GEHLERT
Trial Attorney
Natural Resources Section
999 18th Street, North Terrace, Suite 600
Denver, CO  80202
(303) 844-1386
david.gehlert@usdoj.gov

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOES 1-150, Individual Persons, | Case No. 3:25-cv-1115-MMC |
| Plaintiffs, | **FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT** |
| v. | |
| UNITED STATES DEPARTMENT OF INTERIOR, *et al*., | **Hearing**: July 17, 2026, 9:00 a.m. |
| Defendants, | **Honorable Maxine M. Chesney** |

## TABLE OF CONTENTS

Introduction ..........................................................................................................................1

Argument ............................................................................................................................2

    I.      PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1). ............................................................................................ 2

          A      Plaintiffs Lack Standing to Pursue Their Equal Protection Claim and the Claim is not Ripe. .................................................................................. 2

          B.     Plaintiffs Lack Standing to Assert Their NEPA Claims. ................................. 3

          C.     Plaintiffs' Fifth Amendment Due Process, Fair Housing Act and California Tenant Protection Act are Not Redressable. .................................... 4

               1.      Plaintiffs' Fifth Amendment Due Process, FHA and CTPA claims are not redressable because they are moot. ............................. 5

               2.      Plaintiffs' Fifth Amendment Due Process, FHA and CTPA claims are not redressable because this Court cannot "restore" Plaintiffs' tenancies. .............................................................. 5

    II.     PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6). ............................................................................................ 6

          A.     Plaintiffs' Fifth Amendment Claims Fail as a Matter of Law. ........................ 6

               1.      Plaintiffs have failed to plead a plausible procedural due process claim. ............................................................................. 6

               2.      Plaintiffs have failed to plead a plausible Equal Protection claim. ........ 7

               3.      Plaintiffs have failed to plead a plausible takings claim. .................... 10

          B.     Plaintiffs Have Failed to State a Plausible NEPA Claim. .............................. 11

               1.      Plaintiffs have not pleaded sufficient facts to state a plausible claim that a Supplemental EIS is required. ........................................ 11

               2.      Plaintiffs NEPA claim is not plausible because they failed to exhaust. .............................................................................. 12

          C.     Plaintiffs Have Failed to Plead a Plausible FHA Claim. ............................... 13

               1.      Plaintiffs have failed to plead sufficient facts to establish a plausible FHA claim. ............................................................... 13

               2.      Plaintiffs' FHA claim is not plausible because the NPS acted to pursue a legitimate interest. .................................................... 14

D.      Plaintiffs Have Failed to Plead a Plausible CTPA Claim. ............................ 15

Conclusion ...........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Right to Life Pol. Action Comm. v. Feldman,*
504 F.3d 840 (9th Cir. 2007) ....................................................................................................... 7

*Ashcroft v.Iqbal,*
556 U.S. 662 (2009)............................................................................................................... 8, 9

*Bd. of Regents of State College v. Roth,*
408 U.S. 564 (1972)................................................................................................................. 10

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................................................... 9

*Blackburn v. United States,*
100 F.3d 1426 (9th Cir. 1996) ................................................................................................. 15

*Bruns v. Nat'l Credit Union Admin.,*
122 F.3d 1251 (9th Cir.1997) ................................................................................................... 8

*Cary v. Piphus,*
435 U.S. 247 (1978)................................................................................................................... 6

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,*
591 U.S. 1 (2020)....................................................................................................................... 9

*Dep't of Transp. v. Pub. Citizen,*
541 U.S. 752 (2004)................................................................................................................. 12

*Earth Island Inst. v. Elliott,*
318 F. Supp. 3d 1155 (E.D. Cal. 2018) ..................................................................................... 4

*Frenzel v. AliphCom,*
76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................................................... 13

*Gallinger v. Becerra,*
898 F.3d 1012 (9th Cir. 2018) ................................................................................................... 2

*Great Old Broads for Wilderness v. Kimbell,*
709 F.3d 836 (9th Cir. 2013) ................................................................................................... 11

*Griswold v. Connecticut,*
381 U.S. 479 (1965)................................................................................................................. 10

*Herrington v. Cnty. of Sonoma,*
857 F.2d 567 (9th Cir. 1988) ..................................................................................................... 3

*Lane v. Pena,*
518 U.S. 187 (1996)................................................................................................................. 10

*Lingle v. Chevron U.S.A. Inc.,*
544 U.S. 528 (2005)................................................................................................................. 10

*Low v. LinkedIn Corp.*,
   900 F.Supp.2d 1010 (N.D. Cal. 2012) ................................................................... 11

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................................. 5

*McCarthy v. United States*,
   850 F.2d 558 (9th Cir. 1988) ..................................................................................... 4

*Meyer v. Nebraska*,
   262 U.S. 390 (1923) ................................................................................................ 10

*Munoz v. United States*,
   No. 10-cv-1003-MMA (NLS), 2011 U.S. Dist. LEXIS 122539 (S.D. Cal., Oct. 24, 2011) .......... 14

*Oak Ridge Env't Peace All. v. Perry*,
   412 F. Supp. 3d 786 (E.D. Tenn. 2019) ................................................................... 11

*Planned Parenthood of Greater Wash. & No. Idaho v. U.S Dep't of Health & Hum.,*
   *Sers.*, 946 F.3d 1100 (9th Cir. 2020) ....................................................................... 5

*Russell Country Sportsmen v. U.S. Forest Serv.*,
   668 F.3d 1037 (9th Cir. 2011) ................................................................................. 12

*Sierra Club v. U.S. Fish & Wildlife Serv.*,
   235 F. Supp. 2d 1109 (D. Or. 2002) .......................................................................... 4

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ............................................................................................. 3, 4

*Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*,
   576 U.S. 519 (2015) ......................................................................................... 14, 15

*The Comm. Concerning Cmty. Improvement v. City of Modesto*,
   583 F.3d 690 (9th Cir. 2009) ..................................................................................... 8

*Theodore Roosevelt Conservation P'ship v. Salazar*,
   661 F.3d 66 (D.C. Cir. 2011) ..................................................................................... 6

*Vill. of Arlington Heights v. Metropolitan Housing Dev. Corp.*,
   429 U.S. 252 (1977) ............................................................................................. 8, 9

**Statutes**

16 U.S.C. § 459c-7 .................................................................................................. 6, 7, 14

54 U.S.C. § 100101 ................................................................................................... 10, 14

54 U.S.C. § 101332(a) .................................................................................................. 7, 14

Cal. Civ. Code § 1946.2 ................................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 4

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 4

**Other Authorities**

Pub. L. No. 87-657.................................................................................................................... 14

***Introduction***

Plaintiffs' Opposition to Defendants' Motions to Dismiss glosses over the impact Plaintiffs having left the Seashore has on their claims.  It does not matter that some Plaintiffs resided on the Seashore when the First Amended Complaint was filed.  Plaintiffs' departure has mooted their claims of eviction.  And because this Court can neither order the ranchers to return and "restore" Plaintiffs' tenancies, nor force the National Park Service (NPS) to implement the management plan embodied in the 2021 ROD, Plaintiffs' departure also moots their procedural due process, Fair Housing Act (FHA) and California Tenant Protect Act (CTPA) claims as well.

Plaintiffs' equal protection claims fail because Plaintiffs continue to essentially ignore the language of the 2025 Record of Decision (2025 ROD), which by its plain terms neither "permits" any group to obtain housing on the Seashore nor even "preserves" housing for any group.  Indeed, the only group identified as having even the *possibility* of obtaining housing is Park employees, a group that is not similarly situated to Plaintiffs—as the Seashore's statutory ban on public housing confirms.

Plaintiffs NEPA claims must be dismissed because they failed to raise their concerns about the closure of ranches and the consequent possible reuse of ranch housing when given the opportunity to do so and because Plaintiffs have not plead facts sufficient to show a supplemental environmental impact statement (EIS) is required.

Finally, Plaintiffs ignore the federal government's immunity to suit.  They fail to allege a waiver of sovereign immunity for their Fifth Amendment takings claim and their own arguments prove that the California Tenant Protection Act (CTPA) would directly regulate the NPS's management of the Seashore in contravention of the doctrine of intergovernmental immunity.

*Argument*

## I.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1).

### A. Plaintiffs Lack Standing to Pursue Their Equal Protection Claim and the Claim is not Ripe.

Plaintiffs contend their Equal Protection claim should not be dismissed because it raises harms they allege to have personally suffered, rather than a "'generally available grievance' regarding a government action." Dkt. No. 105 at 4 (citation omitted).  Plaintiffs' argument is a red herring.  Federal Defendants did not argue that Plaintiffs lacked standing because their injury was potentially applicable to the public at large.  Rather, Defendants argued that it is speculative whether Plaintiffs themselves will ever be injured.  Dkt. No. 102 at 5.

Plaintiffs claim they are injured for Equal Protection purposes because the NPS is "permitting the Conservancy [TNC] to reuse the ranch buildings as affordable housing for the Conservancy's employees," who Plaintiffs believe to be "predominantly not of Hispanic origin." Dkt. No. 97 ¶ 85.  Plaintiffs contend their injury is not speculative because the 2025 ROD expressly contemplates the vacated "property's 're-adaptive use.'"[1]  Dkt. No. 105 at 4.  Plaintiffs miss the point.  For re-use of the vacated ranch building to injure Plaintiffs in an Equal Protection sense, the NPS must both (1) decide to use a vacated ranch building for housing and (2) offer that housing to similarly situated entities who are not members of a protected class. *See Gallinger v. Becerra*, 898 F.3d 1012, 1016 (9th Cir. 2018) (The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike.").  It is whether both those two events will occur that is speculative.

As the 2025 ROD explains,

---

[1]    Plaintiffs also suggest the ROD injured them because it resulted in "all ranch worker housing structures being vacated, and the [Plaintiffs] being evicted." Dkt. No. 105 at 4 (cleaned up).   But the Departing Ranchers ended housing for all their tenants, whether members of a protected class or not. Thus, no similarly situated groups were treated differently, much less unequally.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 2

> The NPS will evaluate and pursue adaptive reuse of these unutilized complexes and individual buildings as a preservation strategy, including exploring the adaptive reuse of these buildings for NPS or park partner operational uses,[2] visitor servicing programs, use by conservation partners, or other types of adaptive reuse that support their long-term preservation.  New location(s) for administrative or volunteer accommodations (e.g., recreational vehicle hookup, or park employee residential housing) will also be considered.  Based on initial understanding of condition and knowledge about the resources within the ranch cores, the NPS has identified that some ranch cores may be adaptively reused to help meet park employee housing needs, or could be used by conservation partners to support the implementation of the overall Targeted Grazing program.[3]

Dkt. No. 36-4 at 49.  The 2025 ROD adds that "[f]uture adaptive reuse opportunities will be considered through site specific planning and compliance processes" and that should those processes show that a property cannot be reused, the property may be demolished.  *Id.* at B-3.

Thus, the 2025 ROD does not "permit" TNC to use vacated ranch buildings to house its employees, or even "preserve" access to housing for anyone, much less specifically for TNC's employees.  *Cf.* Dkt. No. 105 at 18.  Plaintiffs' claimed injury is therefore not imminent.  Rather, it hinges on speculation that, at some unknown time, the NPS may treat Plaintiffs unequally by deciding to use ranch buildings to provide housing for TNC employees—an outcome that is not even contemplated in the 2025 ROD.  Further, because there has been no decision on how the vacant buildings will be used, Plaintiffs' Equal Protection claim is not ripe.  *Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 568–69 (9th Cir. 1988) ("[I]n the area of land use," a ripe equal protection claim requires "a final decision by the government which inflicts a concrete harm upon the plaintiff.").

**B.  Plaintiffs Lack Standing to Assert Their NEPA Claims.**

An injury in fact is the "hard floor" of standing.  *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009).  Thus, although NEPA accords only procedural rights, a prospective NEPA

---

[2]  Operational uses would involve reuse of the "barns, Grade A dairies, sheds [and] other out-buildings" being vacated.  *See* Dkt. No. 36-4 at 43.

[3]  The ROD later explains that support of the the Targeted Grazing Program would require "maintenance and operation of corrals and ranch infrastructure (non-building)" in ranch core areas.  Dkt. No. 36-4 at 50.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 3

plaintiff still "must show that the action injures him in a concrete and personal way." *Id.*   NEPA plaintiffs generally do so by declaring they have definitive plans to use the area that was the subject of the NEPA process.  *See, e.g.*, *Earth Island Inst. v. Elliott*, 318 F. Supp. 3d 1155, 1172 (E.D. Cal. 2018); *Sierra Club v. U.S. Fish & Wildlife Serv.*, 235 F. Supp. 2d 1109, 1124 (D. Or. 2002). Plaintiffs contend that they need not do so because some Plaintiffs "continue to reside within the Seashore."  Dkt. No. 105 at 5.  That was true at the time the Amended Complaint was filed, but today no Plaintiffs continue to reside on the Seashore.  Dkt. No. 102-1 (Altman Declaration) at 1-2.[4]

Plaintiffs' assertion that they "seek to maintain their residence now" does not gain them standing because it is completely at odds with the fact that they have voluntarily relocated to new residences outside the Seashore.  In *Summers*, the Supreme Court rejected an argument that standing existed because the plaintiff "want[ed] to" visit the National Forest where the disputed projects were being implemented.  555 U.S. at 496.  Plaintiffs' desire to regain residency on the Seashore is no more of a concrete plan than "wanting to" visit a National Forest.  Absent a definite plan to return to the Seashore, Plaintiffs have not made the showing necessary to demonstrate they will suffer a concrete injury.  *Summers,* 555 U.S. at 496.  Because Plaintiffs have failed to show a concrete and imminent injury, their NEPA claim must be dismissed.

### C.  Plaintiffs' Fifth Amendment Due Process, Fair Housing Act and California Tenant Protection Act are Not Redressable.

Federal Defendants have shown that Plaintiffs' Fifth Amendment Due Process, FHA, and CTPA claims are moot because now that all Plaintiffs have left the Seashore, there is no possibility of "eviction" which a declaration could redress.  Dkt. No. 102 at 3-4.  Plaintiffs attempt to avoid that conclusion by reframing their request for relief from an injunction to prevent their "eviction," to a

---

[4]    Plaintiffs seek to strike Superintendent Altman's Declaration because it is allegedly inconsistent with Rule 12(b)(6). Dkt. No. 105 at 23.  But Defendants' mootness and standing arguments are made under Rule 12(b)(1),  *see* Dkt. No. 102 at 2, where use of declarations is proper. *E.g.*, *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

request for an order restoring their tenancies.  Dkt. No. 105 at 6.  No matter how framed, Plaintiffs have failed to show their Fifth Amendment Due Process, FHA and CTPA claims are likely to be redressable. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

### 1.    Plaintiffs' Fifth Amendment Due Process, FHA and CTPA claims are not redressable because they are moot.

Plaintiffs contend their claims are not moot because certain Plaintiffs continue to reside on the Seashore and those who have departed continue to seek just compensation.  Dkt. No. 105 at 5-6.  Neither contention breathes life into Plaintiffs' claims.[5]

Maintaining a live controversy is a continuing obligation.  Dkt. No. 102 at 3 (citing *Planned Parenthood of Greater Wash. & No. Idaho v. U.S Dep't of Health & Hum. Sers.*, 946 F.3d 1100, 1109 (9th Cir. 2020).  Thus, once the last of the Plaintiffs vacated the Seashore, it no longer mattered that some Plaintiffs were residing there when the First Amended Complaint was filed.  Plaintiffs do not dispute that none of their members presently reside on the Seashore.  Because no Plaintiffs reside on the Seashore, there is no basis to apply the obligations of procedural due process, the FHA or the CTPA and Plaintiffs' claims invoking those statutes are moot.

### 2.    Plaintiffs' Fifth Amendment Due Process, FHA and CTPA claims are not redressable because this Court cannot "restore" Plaintiffs' tenancies.

Plaintiffs contend their injuries can be redressed by an Order "restoring (or requiring restoration" of Plaintiffs' tenancies. Dkt. No. 105 at 6.  They then suggest they should be entitled to amend their complaint again to plead that they "have a right to return to the Seashore and to enter into leases with the Ranchers as provided in the 2021 GMPA [the management plan adopted by the 2021 ROD]." *Id.*  Both those arguments fail for the same reasons: the Ranchers have left the Seashore, relinquished their leasehold interests, and have been dismissed from the litigation by

---

[5]    Federal Defendants did not argue that Plaintiffs' claims for just compensation are moot.   As shown below, Plaintiffs have failed to plead a takings claim which can be heard by this Court.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 5

Plaintiffs. Because the Ranchers cannot be ordered back, there is no possibility for the Plaintiffs to become ranch subtenants.  16 U.S.C. § 459c-7 (precluding the NPS from offering housing to the general public that is unconnected to ranching).  Further, Plaintiffs' effort to turn back the clock and have the Seashore operated under what they refer to as the "2021 GMPA [the general management plan adopted by the 2021 ROD]," fails because the 2021 GMPA (to use Plaintiffs' term) was rescinded by the 2025 ROD and is now a legal nullity.  *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 79 (D.C. Cir. 2011).

## II.    PLAINTIFFS' CLAIMS SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6).

### A.    Plaintiffs' Fifth Amendment Claims Fail as a Matter of Law.

#### 1.    Plaintiffs have failed to plead a plausible procedural due process claim.

Plaintiffs' Amended Complaint alleges that "the procedures the [Federal Defendants] followed to *settle* the Environmentalists' Lawsuit are constitutionally inadequate to evict the [Plaintiffs] from their homes."  Dkt. No. 97 ¶ 82 (emphasis added).  Still, Plaintiffs argue their admitted lack of a right to participate in the settlement negotiations is irrelevant because the "result" of the settlement was that Plaintiffs were "forced" to leave the Seashore and "deprived" of their interest in maintaining a home.  Dkt. No. 105 at 9-10.  That argument fails because Plaintiffs conflate their protectable interest with the procedures the Government had to follow regarding that interest.  *See Cary v. Piphus,* 435 U.S. 247, 259 (1978).  Indeed, the Amended Complaint makes clear that the procedural defect Plaintiffs identify is the way Federal Defendants settled prior litigation over the Seashore.  *See* Dkt. No. 97 ¶¶ 80-82. Because Plaintiffs do not show that they had a right to participate in the settlement negotiations, they were due no additional process. Consequently, their procedural due process claim must fail.

Plaintiffs also contend that the fact that there have been no eviction proceedings is irrelevant because Plaintiffs "allege that they *will be* evicted, and one does not have to wait for the imminent

Federal Defendants' Reply in Support of Motion to Dismiss – Page 6

deprivation of a property interest to occur before seeking relief." Dkt. No. 105 at 10 (emphasis in original). This argument fails for two reasons. First, it ignores the obvious fact that all Plaintiffs have accepted relocation payments and left the Seashore and therefore there is no possibility that they will be evicted. Second, and also a result of their relocation, it is now impossible for Plaintiffs to plead the facts necessary to show that evictions are sufficiently imminent for their claim to be constitutionally ripe. *Alaska Right to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007) (listing elements). Accordingly, Plaintiffs' Procedural Due Process claims must be dismissed.[6]

**2.  Plaintiffs have failed to plead a plausible Equal Protection claim.**

Plaintiffs contend they have pleaded a plausible Equal Protection claim based on allegations that Plaintiffs are "being treated different from similarly situated individuals (*i.e*, the non-Hispanic *park* employees)."[7] Dkt. No. 105 at 11 (emphasis added). Those allegations, however, do not support an Equal Protection claim. First, the Amended Complaint does not allege that park employees are non-Hispanic. Second, Plaintiffs are not similarly situated with park employees. Congress expressly authorized the NPS to provide housing for park employees, 54 U.S.C. § 101332(a), while effectively precluding members of the general public from residing on the Seashore, 16 U.S.C. § 459c-7. Third, as noted above, the 2025 ROD's discussion of possible re-use of vacated ranch buildings does not treat Plaintiffs unfavorably because, by its plain language, it does not provide or even "preserve" housing for any subgroup of the general public. Dkt. No. 34-6 at 49. Indeed, the 2025 ROD does not even require that buildings be reused and contemplates that

---

[6]     Because Plaintiffs' CTPA claim also rests on an assertion of potential eviction as the alleged injury, Dkt. No. 97 at ¶ 32, that claim is also not ripe.

[7]     Plaintiffs' reference to park employees is either an improper attempt to again amend their complaint, *see* Dkt. No. 97 at ¶ 86 (referencing TNC employees), or a drafting error. As shown below, Plaintiffs have not plead a plausible Equal Protection claim either way.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 7

buildings not suitable for re-use may be demolished.  *Id.* at B-3.  Plaintiffs' equal protection claim must therefore be dismissed.  *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 702 (9th Cir. 2009) ("claims alleging violations of equal protection [require plaintiffs to show] that actions of the defendants had a discriminatory impact")

Nor have Plaintiffs met the requirement that they allege facts showing that the NPS acted "at least in part 'because of,' not merely 'in spite of,'" adverse effects on a protected group.  *See* Dkt. No. 102 at 7 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).  Plaintiffs now contend the Amended Complaint "alleges that the 2025 ROD was motivated by an invidious discriminatory purpose." Dkt. No. 105 at 11.  But the Amended Complaint does not directly address NPS's intent or motivation at all, an omission which requires dismissal of the Amended Complaint.  *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir.1997) (courts cannot read unalleged facts into a complaint).

Plaintiffs are also wrong in asserting that the facts they do allege can be cobbled together to concoct a plausible claim that the NPS acted with an "invidious discriminatory purpose."  Plaintiffs rely on factors discussed in *Vill. of Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 266 (1977), the first of which is the impact of the action—whether it "bears more heavily on one race than another" and has an effect that is "unexplainable on grounds other than race."  As explained above, the impact of the 2025 ROD's discussion of housing does not bear more heavily on one group (or race) than another.  Contrary to Plaintiffs' repeated assertions, the 2025 ROD does not say vacant ranch buildings "will be" used to meet anyone's housing needs.  *Cf.* Dkt. No. 105 at 1, 11, 22.  Further, the NPS's decision to evaluate the vacated ranch structures for possible re-use as housing for park employees is readily explained by grounds other than race—Congress has authorized the NPS to provide housing for park employees and the "severe lack of affordable housing in West Marin County," Dkt. No. 97 ¶ 74, makes it difficult for park employees to find housing.

The second factor, historical background, is most relevant if it "reveals a series of official actions taken for invidious purposes," an allegation that is absent here. *Arlington Heights,* 429 U.S. at 266. Nor do Plaintiffs argue that the NPS acted in response to information it learned about Plaintiffs, as was the case in the example the Supreme Court provided to illustrate the third factor, sequence of events.

Plaintiffs highlight the NPS's alleged departure from prior policy and practice[8] but the Supreme Court has observed that government action is not "irregular" for purposes of determining whether an act was taken with invidious purpose merely because the act "was a natural response to a newly identified problem." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.,* 591 U.S. 1, 34-35 (2020) (Roberts, C.J., plurality opinion). The departure of the ranchers was such a "problem," and as explained below, the NPS's response to that "problem" is easily explainable by means other than race.

At *best*, Plaintiffs' invocation of the *Arlington Heights* factors shows they have pleaded facts that are merely consistent with their assertion of an invidious conspiracy resulting in Plaintiffs being "evict[ed] in favor of non-Hispanic park employees." Dkt. No. 105 at 12. Such allegations are insufficient to meet "the threshold requirement of Rule 8(a)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In any event, Plaintiffs' Equal Protection claim is not plausible because there is an obvious alternative explanation for the NPS' expansion of the Scenic Landscape Zone to include the vacated ranch lands. Dkt. No. 102 at 7-8 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). The 2025 ROD explains that, once the Ranchers elected to leave, the NPS needed to address management of the vacated lands. *See* Dkt. No. 36-4 at 1. The resulting decision to expand the existing Scenic

---

[8]    Plaintiffs also complain that the settlement negotiations were conducted in secret, but cite no authority suggesting that "secret" settlement negotiations show an invidious purpose. Indeed, the vast majority of settlement negotiations are confidential.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 9

Landscape Zone unquestionably furthered the NPS's conservation mandate. Dkt. No. 102 at 8 (citing 54 U.S.C. § 100101 (setting forth the "fundamental" conservation purpose of the National Park System)). Plaintiffs' argument to the contrary cannot succeed because it merely repackages their unsupported allegation of a conspiracy and their inaccurate allegation that the ROD allowed "non-Hispanic park employees to move into [the vacated] homes." *See* Dkt. No. 105 at 13.

### 3. Plaintiffs have failed to plead a plausible takings claim.

The grounds for dismissal of Plaintiffs' takings claim against the United States are clear cut. Despite being put on notice, Dkt. No. 76 at 8, and being given an opportunity to amend their complaint, Plaintiffs still have not pled the waiver of sovereign immunity that is a prerequisite to a takings claim against the United States. Dkt. No. 102 at 8; *see also Lane v. Pena*, 518 U.S. 187, 192 (1996).

Even if such a pleading were possible, Plaintiffs' takings claim would still have to be dismissed because Plaintiffs have failed to establish a compensable property interest. Plaintiffs contend that their housing interest is a constitutionally protected property interest, Dkt. No. 105 at 13, but the cases they cite for that proposition all state that the right to establish a home is a constitutionally protected *liberty* interest. *See Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Bd. of Regents of State College v. Roth*, 408 U.S. 564, 573 (1972); *Griswold v. Connecticut*, 381 U.S. 479, 484 (1965).

Plaintiffs also fail to support their contention that their alleged leases – which they have now relinquished – create "property interests under California law and the CPTA." *Cf.* Dkt. No. 105 at 14. The only "California law" Plaintiffs cite is the CPTA. *Id.* Thus, Plaintiffs appear to be arguing that because the CPTA allegedly creates "a right to remain unless a just-cause eviction is established," it somehow creates a property interest. *Id.* Not only do Plaintiffs no longer "remain" in residence under their alleged subleases, the right to seek relief against a landlord is not a property right. Dkt. No. 102 at 8 n.5 (citing *e.g.*, *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005)).

Federal Defendants' Reply in Support of Motion to Dismiss – Page 10

### B. Plaintiffs Have Failed to State a Plausible NEPA Claim.

Plaintiffs engage in misdirection to avoid the conclusion their claim that a supplemental EIS is required is not plausible.[9]  Plaintiffs argue that whether the NPS was required to do a supplemental EIS is "a fact intensive question" not appropriately considered in a motion to dismiss. Dkt. No. 105 at 16.  But that is not the question put before this Court by Federal Defendants' motion to dismiss.  Rather, the question is whether Plaintiffs' Amended Complaint pleaded sufficient facts for this court to draw a reasonable inference that a Supplemental EIS is required.  Dkt. No. 102 at 13.  The answer to that far simpler question is no.

### 1. Plaintiffs have not pleaded sufficient facts to state a plausible claim that a Supplemental EIS is required.

As Federal Defendants explained, the Amended Complaint's allegation that there will be "greater than expected" levels of certain activities because "almost all ranching will cease and the [elk] fencing will be removed at round [sic] the same time," Dkt. No. 97 at ¶ 120, are insufficient to establish a plausible claim because that is effectively the scenario assessed in Alternative F of the 2020 EIS.  Dkt. No. 102 at 14 (citing Dkt. No. 36-2 at 52-54 (describing alternative)).

Plaintiffs now contend they have asserted a plausible claim that a Supplemental EIS is required because the 2025 ROD adopted a "hybrid approach" which selected elements from at least four alternatives evaluated in the EIS.  Dkt. No. 105 at 15.  This argument fails on its face.  By arguing that the NPS selected an alternative composed of elements taken from alternatives examined in the EIS, Plaintiffs effectively concede the NPS examined the impacts of those elements.  *See Great Old Broads for Wilderness v. Kimbell,* 709 F.3d 836, 854 (9th Cir. 2013) (rejecting contention that a SEIS was required because the agency adapted a "different configuration" of elements previously examined in alternatives); *Oak Ridge Env't Peace All. v. Perry*, 412 F. Supp. 3d 786, 827

---

[9]    Plaintiffs did not respond to Federal Defendants' arguments challenging other aspects of their NEPA claims. *Cf.* Dkt. No. 102 at 11-16; *see also Low v. LinkedIn Corp.*, 900 F.Supp.2d 1010, 1031 (N.D. Cal. 2012) (claims not supported in opposition are abandoned).

(E.D. Tenn. 2019) (no SEIS needed where selected alternative was a "hybrid" of alternatives previously examined).

Even so, Plaintiffs argue that *Russell Country Sportsmen v. U.S. Forest Serv.*, 668 F.3d 1037 (9th Cir. 2011) and the NPS NEPA Handbook demonstrate the Amended Complaint alleges sufficient facts to raise a plausible claim that a Supplemental EIS is required. Those authorities apply standards that are effectively identical: so long as the selected action is within the range of the alternatives considered, no Supplemental EIS is needed. *See Russell Country Sportsmen*, 668 F.3d at 1045; NPS NEPA Handbook, Dkt. No. 106-2 at 72-3. That is the case here. The 2025 ROD explains that the action selected by the NPS "consists of elements included in FEIS alternatives B, D, E and F and therefore falls within the spectrum of alternatives considered in the FEIS." Dkt. No. 36-4 at 8. On the Seashore, "vacated ranch lands will be re-zoned as part of the Scenic Landscape Zone, as described in alternatives D and F. Dairy operations in Point Reyes will cease, as per alternative E. Free-ranging tule elk in the planning area will be managed under the approach described in alternative E." *Id.*

Plaintiffs also contend that the 2025 ROD "admits" that environmental impacts will be different from those studied in the EIS, but the example they provide proves that is not the case. Plaintiffs note the 2025 ROD explains that the combination of livestock grazing and elk grazing "will result in a grazing level that is less than that identified in alternatives B, D and E, but more than that identified in alternative F." Dkt. No. 105 at 17 (citing Dkt. No. 36-4 at 47). In other words, the 2025 ROD explains that the level of grazing falls comfortably "within the range of alternatives that were discussed" in the EIS. *Russell Country Sportsmen*, 668 F.3d 1037.

2.    **Plaintiffs NEPA claim is not plausible because they failed to exhaust.**

Plaintiffs' NEPA claim should be dismissed because Plaintiffs failed to exhaust by participating in the NEPA process. *See Dep't of Transp. v. Pub. Citizen*, 541 U.S. 752, 764-65

Federal Defendants' Reply in Support of Motion to Dismiss – Page 12

(2004).  Plaintiffs claim that only once a supplemental EIS is done will they "be able to raise their contentions."  Dkt. No. 105 at 17. That is simply not the case.  During the 2020 EIS process the NPS considered an alternative which would have entirely ended ranching on the Seashore.  Plaintiffs could have raised their housing contentions at that time, but did not.[10]  Because Plaintiffs failed to do so, their NEPA claims should be dismissed.

### C.  Plaintiffs Have Failed to Plead a Plausible FHA Claim.

#### 1.  Plaintiffs have failed to plead sufficient facts to establish a plausible FHA claim.

Plaintiffs attempt to avoid dismissal of their FHA claim by misrepresenting both Federal Defendants' arguments and their own Amended Complaint.  First, Federal Defendants did *not* argue that Plaintiffs must "prove statistical disparities [and] definitively establish causation" to avoid dismissal.  *Cf.* Dkt. No. 105 at 18.  Instead, Federal Defendants argued that Plaintiffs' sole factual allegation—that the NPS treated Plaintiffs differently from TNC's employees through "permitting [TNC] to reuse the ranch buildings as affordable housing for [TNC's] employees"—was speculative and not plausible on its face because the 2025 ROD did not commit to providing housing to anyone. Dkt. No. 102 at 10 (citing Dkt. No. 97 ¶ 99).  As explained above, the 2025 ROD clearly states that no decisions have been made on *any* reuse of ranch buildings.

Plaintiffs apparently recognize that dooms their FHA cause of action because they claim they did not actually allege "that TNC employees will be offered the housing," Dkt. No. 105 at 20.  That is simply wrong.  The Amended Complaint expressly alleges that "Federal Defendants *are permitting* the Conservancy to reuse the ranch buildings as affordable housing for the Conservancy's employees." Dkt. No. 97 at ¶ 99 (emphasis added).  Apart from it being axiomatic that a response brief cannot be used to amend a complaint, *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D.

---

[10]     Had Plaintiffs raised the issue, the NPS could have explained that it lacks authority to provide them with housing in the absence of ranching—as Federal Defendants have been saying since Plaintiffs first sought to intervene in the *Resources Renewal* litigation.

Federal Defendants' Reply in Support of Motion to Dismiss – Page 13

Cal. 2014), Plaintiffs' change in story does not save their FHA claim because their new assertion that Federal Defendants "are preserving the discretion to permit continued residential use for other individuals" is belied by the plain language of the 2025 ROD. The only class of people for which the 2025 ROD even identifies the *possibility* of obtaining housing on the Seashore are Park employees, a class that Congress has expressly authorized the NPS to provide housing to. 54 U.S.C. § 101332(a). Plaintiffs are wrong for a similar reason when they argue that the ROD's "housing allocation decisions" left them "exclu[ded] from future housing opportunities on the Seashore." Dkt. No. 105 at 19. The ROD made no "housing allocation decisions." But Congress did, and elected to exclude members of the public, with rare exceptions not applicable to Plaintiffs. 16 U.S.C. 459c-7.

### 2. Plaintiffs' FHA claim is not plausible because the NPS acted to pursue a legitimate interest.

Plaintiffs contend that their FHA claim cannot be dismissed because Federal Defendants were premature in showing the NPS acted with a legitimate interest defense. Dkt. No. 105 at 20. Although Plaintiffs are correct that affirmative defenses are generally not addressed at the motion to dismiss stage, that is because doing so requires *the defendant* to gather evidence, not because it is prohibited. *See Munoz v. United States*, No. 10-cv-1003-MMA (NLS), 2011 U.S. Dist. LEXIS 122539, at *10-11 (S.D. Cal., Oct. 24, 2011). Here, Federal Defendants require no extrinsic evidence to demonstrate that the NPS acted to serve its legitimate interests–the National Park Service Organic Act and the Seashore's Enabling Act both make that point in spades. *See* 54 U.S.C. § 100101 (setting forth the "fundamental" conservation purpose of the National Park System); Pub. L. No. 87-657, § 1, 76 Stat. 538 (1962) (explaining that the Seashore was established to "save and preserve, for purposes of public recreation, benefit, and inspiration, a portion of the diminishing seashore of the United States").

Further, Federal Defendants' assertion of the legitimate interest defense is entirely consistent with *Tex. Dep't of Hous. and Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519 (2015).

Federal Defendants' Reply in Support of Motion to Dismiss – Page 14

In that case the Supreme Court emphasized that it crafted strict limits on disparate impact claims "to protect potential defendants against abusive disparate-impact claims." *Inclusive Cmtys.*, 576 U.S. at 544. Federal Defendants acted to further that aim by demonstrating that Plaintiffs' FHA claims would have to fail even if Plaintiffs established a prima facia FHA case. Dkt. No. 102 at 10. Federal Defendants should not be subject to further litigation because Plaintiffs elected not to respond, particularly when the NPS's decision to end ranching on the vacated lands served the NPS's legitimate—and fundamental—interest in conservation. Consequently, even if this Court finds Plaintiffs have pled a prima facia case, they still have not pled a plausible claim for relief.

### D.  Plaintiffs Have Failed to Plead a Plausible CTPA Claim.

Plaintiffs claim their CTPA claim is not barred by intergovernmental immunity "because the CTPA does not directly regulate federal operations." Dkt. No. 105 at 22. Plaintiffs' own arguments prove that contention has no merit.

Plaintiffs argue that the vacated ranch buildings cannot have been lawfully withdrawn from the housing rental market because the NPS did not comply with the requirements of the CTPA, *id.*, but those requirements demonstrate that the CPTA would directly regulate the federal government. For instance, the CTPA would require the NPS to provide written notice terminating the tenancies for just cause; would require payment of relocation assistance; would allow NPS management decisions to be voided for non-compliance with the Act; and would subject the NPS to claims for money damages. *See* Cal. Civ. Code § 1946.2. In short, the CTPA would regulate the NPS no less directly than the state law requiring the posting of notices that the Ninth Circuit refused to allow to be applied to the NPS in *Blackburn v. United States*, 100 F.3d 1426, 1435 (9th Cir. 1996).

### *Conclusion*

As shown above, Plaintiffs' Amended Complaint should be dismissed.

Dated: May 29, 2026                    Respectfully submitted,

                                       ADAM R.F. GUSTAFSON
                                       Principal Deputy Assistant Attorney General
                                       U.S. DEPARMENT OF JUSTICE
                                       Environment and Natural Resources Division

                                       /s/ *David W. Gehlert*
                                       DAVID W. GEHLERT (CO Bar 21852)
                                       Trial Attorney
                                       Natural Resources Section
                                       999 18th Street, South Terrace, Suite 370
                                       Denver, CO  80202
                                       (303) 844-1386
                                       david.gehlert@usdoj.gov

                                       *Attorneys for Defendants*
                                       *U.S. Dept. of the Interior, et al.*


## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2026, I electronically filed the foregoing **MOTION TO DISMISS** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

                                       /s/ *David W. Gehlert*
                                       DAVID W. GEHLERT

Federal Defendants' Reply in Support of Motion to Dismiss – Page 16